## GOLD-WASHING AND WATER COMPANY *v.* KEYES.

1. A petition for the removal of a suit from a State court to a Federal court is insufficient, unless it sets forth in due form, such as is required in good pleading, the essential facts not otherwise appearing in the case, which, under the act of Congress, are conditions precedent to the change of jurisdiction.

2. A suit cannot be so removed, under the second section of the act of March 3, 1875 (18 Stat. 470), simply because, in its progress, a construction of the Constitution or a law of the United States may be necessary, unless it, in part at least, arises out of a controversy in regard to the operation and effect of some provision in that Constitution or law upon the facts involved.

3. As important questions of practice are likely to arise under that act, this decision is to be considered as conclusive only upon the question directly involved and decided.

ERROR to the Circuit Court of the United States for the District of California.

This was a suit in the nature of a bill in equity, commenced July 29, 1876, in a State court of California, by Keyes, the owner of certain agricultural lands situated on Bear River, against the Little York Gold-Washing and Water Company, and others, the plaintiffs in error, who were engaged in hydraulic mining upon the highlands adjacent to that river and its tributaries, to restrain them from depositing the tailings and debris from their several mines in the channel of the river. The defendants demurred to the complaint; and, before the term at which the cause could be first tried, filed their petition, accompanied by the necessary bond, for the removal of the suit to the Circuit Court of the United States for the District of California, under the provisions of the act of March 3, 1875 (18 Stat. 470). The material parts of the petition, which was otherwise in due form, are as follows: —

"Your petitioners further represent that they are the owners of certain extensive and valuable gold-bearing placer mines, situated in the counties of Placer and Nevada, in said State of California, which they claim under the laws of the United States, and are engaged in working the same by what is known as the hydraulic process of mining; that said hydraulic process necessarily requires the employment of large heads or streams of water, used through pipes or hose, under heavy pressure, for the purpose of loosening or washing the gold-bearing earth and gravel contained in said mining

claims into large flumes, where the gold is separated from the earth by the action of the water, and is retained. That the gold in said claim is distributed in very fine particles throughout the entire gravel deposit, and cannot be obtained in any other manner, nor can said mining claims of your petitioners be worked in any other manner save by said hydraulic process; that in working said mines your petitioners necessarily deposit in the channels of the Bear River and its tributaries large quantities of tailings from said mines; that the said Bear River and its tributaries are the natural and only outlets for said hydraulic gold-mines; and your petitioners claim the right to work, use, and operate said mines, and, in so doing, to use the channels of Bear River and its tributaries as a place of deposit for their said tailings, under the provisions of the act of Congress of the United States, entitled 'An Act granting the right of way to ditch and canal owners over the public lands, and for other purposes,' passed July 26, 1866, and the act amendatory thereof, passed July 9, 1870, and the 'Act to promote the development of the mining resources of the United States,' passed May 10, 1872, and other laws of the United States.

"That said action arises under, and that its determination will necessarily involve and require the construction of, the laws of the United States above mentioned, as well as the pre-emption laws of the United States. That the mines of your petitioners are of great value, to wit, of an aggregate value of not less than ten millions of dollars; and that if your petitioners are prevented from using the said channels of Bear River and its tributaries as outlets for their said tailings and water, their said mines will be thereby rendered wholly valueless."

The State court accepted the petition and bond, and transferred the suit; but the Circuit Court remanded it, on the ground that no real or substantial controversy, properly within the jurisdiction of that court, appeared to be involved. To obtain a review of this action of the Circuit Court, the present writ of error has been brought, under the provision of sect. 5 of the act of 1875, which gives authority for that purpose.

*Mr. S. M. Wilson* for the plaintiffs in error.

Although the construction of the act of March 3, 1875 (18 Stat. 470), under which the removal of this cause was ordered, has not been judicially settled, the sixth article of the Constitution, which differs from it only in not limiting the jurisdiction

of the    arts of the United States to cases of a civil nature, has been the subject of repeated decisions. *Martin* v. *Hunter's Lessee*, 1 Wheat. 304; *Cohens* v. *Virginia*, 6 id. 264; *Osborne et al.* v. *The Bank of the United States*, 9 id. 738. And the case at bar seems to be within their principles.

Another argument in favor of the jurisdiction of the Circuit Court is found in the fact that, if the case should proceed in the State court, it may eventually be brought here by the defendants, should a decision adverse to their rights under the acts of Congress be rendered. *Delmas* v. *Insurance Company*, 14 Wall. 661; *Hall* v. *Jordan*, 15 id. 393; *Crapo* v. *Kelly*, 16 id. 610.

*Mr. Montgomery Blair, contra.*

Mr. Chief Justice Waite delivered the opinion of the court.

It is well settled that in the courts of the United States the special facts necessary for jurisdiction must in some form appear in the record of every suit, and that the right of removal from the State courts to the United States courts is statutory. A suit commenced in a State court must remain there until cause is shown under some act of Congress for its transfer. The record in the State court, which includes the petition for removal, should be in such a condition when the removal takes place as to show jurisdiction in the court to which it goes. If it is not, and the omission is not afterwards supplied, the suit must be remanded.

The attempt to transfer this cause was made under that part of sect. 2 of the act of 1875 which provides for the removal of suits " arising under the Constitution or laws of the United States." In the language of Chief Justice Marshall, a case " may truly be said to arise under the Constitution or a law of the United States whenever its correct decision depends upon the construction of either " (*Cohens* v. *Virginia*, 6 Wheat. 379); or when " the title or right set up by the party may be defeated by one construction of the Constitution or law of the United States, or sustained by the opposite construction " (*Osborne* v. *Bank of the United States*, 9 id. 822).

The question of jurisdiction was submitted to the Circuit Court, upon the record sent from the State court. Upon the

pleadings alone, it is clear the defendants had not brought themselves within the statute. The complaint simply set forth the ownership by Keyes of his property, and the acts of the defendants which, it was claimed, created a private nuisance. No rights were asserted under the Constitution or laws of the United States, and nothing was stated from which it could in any manner be inferred that the defendants sought to justify the acts complained of by reason of any such authority. The defendants, in their demurrer, which set forth specifically the grounds relied upon, presented no question of Federal law. The validity of the judgment of the Circuit Court, therefore, depends upon the sufficiency of the facts set forth in the petition for removal.

For the purposes of the transfer of a cause, the petition for removal, which the statute requires, performs the office of pleading. Upon its statements, in connection with the other parts of the record, the courts must act in declaring the law upon the question it presents. It should, therefore, set forth the essential facts, not otherwise appearing in the case, which the law has made conditions precedent to the change of jurisdiction. If it fails in this, it is defective in substance, and must be treated accordingly. Thus, in *Insurance Company* v. *Pechner* (95 U. S. 183), we decided that a petition for removal, on account of the citizenship of the parties, did not divest the State court of its power to proceed; because, when taken in connection with the pleadings and process in the cause, it failed to show such citizenship at the time of the commencement of the action as would give the Circuit Court jurisdiction. And in *Amory* v. *Amory* (id. 186) we held to the same effect in reference to a petition which failed to set forth the personal citizenship of the parties.

The office of pleading is to state facts, not conclusions of law. It is the duty of the court to declare the conclusions, and of the parties to state the premises.

In this petition, the defendants set forth their ownership, by title derived under the laws of the United States, of certain valuable mines that can only be worked by the hydraulic process, which necessarily requires the use of the channels of the river and its tributaries in the manner complained of; and they allege that they claim the right to this use under the provisions

of certain specified acts of Congress. They also allege that the action arises under, and that its determination will necessarily involve and require the construction of, the laws of the United States specifically enumerated, as well as the pre-emption laws. They state no facts to show the right they claim, or to enable the court to see whether it necessarily depends upon the construction of the statutes.

Certainly, an answer or plea, containing only the statements of the petition, would not be sufficient for the presentation of a defence to the action under the provisions of the statutes relied upon. The immunities of the statutes are, in effect, conclusions of law from the existence of particular facts. Protection is not afforded to all under all circumstances. In pleading the statute, therefore, the facts must be stated which call it into operation. The averment that it is in operation will not be enough; for that is the precise question the court is called upon to determine.

The statutes referred to contain many provisions; but the particular provision relied upon is nowhere indicated. A cause cannot be removed from a State court simply because, in the progress of the litigation, it may become necessary to give a construction to the Constitution or laws of the United States. The decision of the case must depend upon that construction. The suit must, in part at least, arise out of a controversy between the parties in regard to the operation and effect of the Constitution or laws upon the facts involved. That this was the intention of Congress is apparent from sect. 5 of the act of 1875, which requires the Circuit Court to dismiss the cause, or remand it to the State court, if it shall appear, "at any time after such suit has been brought or removed thereto, that such suit does not really or substantially involve a dispute or controversy properly within the jurisdiction of said Circuit Court."

Before, therefore, a circuit court can be required to retain a cause under this jurisdiction, it must in some form appear upon the record, by a statement of facts, "in legal and logical form," such as is required in good pleading (1 Chit. Pl. 213), that the suit is one which "really and substantially involves a dispute or controversy" as to a right which depends upon the con-

struction or effect of the Constitution, or some law or treaty of the United States. If these facts sufficiently appear in the pleadings, the petition for removal need not restate them; but, if they do not, the omission must be supplied in some form, either by the petition or otherwise. Under the application of this rule, we think that the record in this case is insufficient, and that the Circuit Court did not err in remanding the cause.

The act of 1875 has made some radical changes in the law regulating removals. Important questions of practice are likely to arise under it, which, until the statute has been longer in operation, it will not be easy to decide in advance. For the present, therefore, we think it best to confine ourselves to the determination of the precise question presented in any particular case, and not to anticipate any that may arise in the future. Under these circumstances, the present case is not to be considered as conclusive upon any question except the one directly involved and decided.

*Judgment affirmed.*

MR. JUSTICE BRADLEY, dissenting.

The question intended to be raised in this case is, whether the grants made by the United States of placer mines, as such, involve the right to discharge the refuse earth and gravel produced by working said mines, called "tailings," into the neighboring streams, in this case Bear River, inasmuch as the mines cannot be worked except by means of a discharge of the streams of water loaded with such refuse. This question depends upon the construction of the titles given by the United States. When the government determined to sell mining property as such, and placer mines *eo nomine*, did it, or did it not, intend to confer a right of working them in the only way in which they could be worked? It seems to me that the question is clearly raised by the allegations of the petition in this case; and the claim of the right is clearly made. Whether it can be maintained as against the occupants of inferior lands in the valleys which may be injured thereby is another question, not now before us. I think the parties were entitled to a removal of the cause.