## DILLON *v.* GLOSS, DEPUTY COLLECTOR OF UNITED STATES INTERNAL REVENUE.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 251. Argued March 22, 1921.—Decided May 16, 1921.

1. Article V of the Constitution implies that amendments submitted thereunder must be ratified, if at all, within some reasonable time after their proposal. Pp. 371, 374.
2. Under this Article, Congress, in proposing an amendment, may fix a reasonable time for ratification. P. 375.
3. The period of seven years, fixed by Congress in the resolution proposing the Eighteenth Amendment, was reasonable. P. 376.
4. The Eighteenth Amendment became a part of the Constitution on January 16, 1919, when, as the court notices judicially, its ratification in the state legislatures was consummated; not on January 29, 1919, when the ratification was proclaimed by the Secretary of State. P. 376.
5. As this Amendment, by its own terms, was to go into effect one year after being ratified, §§ 3 and 26, Title II, of the National Prohibition Act, which, by § 21, Title III, were to be in force from and after the effective date of the Amendment, were in force on January 16, 1920. P. 376.

262 Fed. Rep. 563, affirmed.

THE case is stated in the opinion.

*Mr. Levi Cooke*, with whom *Mr. Theodore A. Bell* and *Mr. George R. Beneman* were on the brief, for appellant:

The Eighteenth Amendment is invalid because of the extra-constitutional provision of the third section. Congress has no power to limit the time of deliberation or otherwise control what the legislatures of the States shall do in their deliberation. Any attempt to limit voids the proposal.

The legislative history of the Amendment shows that without § 3 the proposal would not have passed the Senate. Cong. Rec., 65th Cong., 1st sess., pp. 5648–5666; Cong. Rec., 65th Cong., 2d sess., p. 477.

The same taint attended the passage of the amendment in the House, because there what is now § 3 was considered and the limitation changed from six to seven years, and it is impossible to say now that without the attempted time limitation upon the States two-thirds of the House would have assented to the proposal of the amendment.

The fact that thirty-six States thus ratified within the time emphasizes the evil that was accomplished by the limitation, and can in no way be invoked to suggest that the third section became surplusage in view of this result attained so well within the seven-year limitation attempted to be set by Congress. On the contrary, the fact of there being a time limitation tended to destroy any deliberation by the States and to enable the faction which was pressing for ratification of the amendment to urge immediate indeliberate action in order to avoid the possibility of the time limitation expiring without thirty-six States having made ratification.

The history of the times discloses, if the court may take judicial notice thereof, that legislators elected prior to the submission by Congress were urged to act forthwith, without awaiting the election of legislators by an electorate aware of the pendency of the congressional proposal, and that in some legislatures ratification was secured without

debate in the precipitate action urged by the faction advocating the amendment. The speed with which the amendment was disposed of by the state legislatures tends to establish the absence of deliberation; and in any view the fact stands that the States were acting in the presence of a limitation fixed by Congress, violative of Art. V, in terms unheard of in the history of the country, and contrary to any procedure sanctioned by the organic law, with the very nature and structure of which both the Congress and the state legislatures were dealing. See 2 Story, Const., 3d ed., § 1830.

The National Prohibition Act should be found to have become effective, if at all, January 29, 1920, a year after ratification of the amendment was proclaimed and made known to the public. The proclamation of the Secretary of State must be treated as the publication of the fact of ratification, under Rev. Stats., § 205, of which all persons may be considered to be charged with knowledge.

*Mrs. Annette Abbott Adams*, Assistant Attorney General, for appellee.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This is an appeal from an order denying a petition for a writ of *habeas corpus*. 262 Fed. Rep. 563. The petitioner was in custody under § 26 of Title II of the National Prohibition Act, c. 85, 41 Stat. 305, on a charge of transporting intoxicating liquor in violation of § 3 of that title, and by his petition sought to be discharged on several grounds, all but two of which were abandoned after the decision in *National Prohibition Cases*, 253 U. S. 350. The remaining grounds are, first, that the Eighteenth Amendment to the Constitution, to enforce which Title II of the act was adopted, is invalid because the congressional

resolution, 40 Stat. 1050, proposing the Amendment, declared that it should be inoperative unless ratified within seven years; and, secondly, that, in any event, the provisions of the act which the petitioner was charged with violating, and under which he was arrested, had not gone into effect at the time of the asserted violation nor at the time of the arrest.

The power to amend the Constitution and the mode of exerting it are dealt with in Article V, which reads:

"The Congress, whenever two-thirds of both Houses shall deem it necessary, shall propose amendments of this Constitution, or, on the application of the legislatures of two-thirds of the several States, shall call a convention for proposing amendments, which, in either case, shall be valid to all intents and purposes, as part of this Constitution, when ratified by the legislatures of three-fourths of the several States, or by conventions in three-fourths thereof, as the one or the other mode of ratification may be proposed by the Congress; Provided that no amendment which may be made prior to the year one thousand eight hundred and eight shall in any manner affect the first and fourth clauses in the ninth section of the first article; and that no State, without its consent, shall be deprived of its equal suffrage in the Senate."

It will be seen that this article says nothing about the time within which ratification may be had—neither that it shall be unlimited nor that it shall be fixed by Congress. What then is the reasonable inference or implication? Is it that ratification may be had at any time, as within a few years, a century or even a longer period, or that it must be had within some reasonable period which Congress is left free to define? Neither the debates in the federal convention which framed the Constitution nor those in the state conventions which ratified it shed any light on the question.

The proposal for the Eighteenth Amendment is the

first in which a definite period for ratification was fixed.[1]
Theretofore twenty-one amendments had been proposed
by Congress and seventeen of these had been ratified by
the legislatures of three-fourths of the States,—some
within a single year after their proposal and all within
four years. Each of the remaining four had been ratified
in some of the States, but not in a sufficient number.[2]
Eighty years after the partial ratification of one an effort
was made to complete its ratification and the legislature
of Ohio passed a joint resolution to that end,[3] after which
the effort was abandoned. Two, after ratification in one
less than the required number of States, had lain dormant
for a century.[4] The other, proposed March 2, 1861, de-
clared: "No amendment shall be made to the Constitution
which will authorize or give to Congress the power to
abolish or interfere, within any State, with the domestic
institutions thereof, including that of persons held to
labor or service by the laws of said State."[5] Its principal
purpose was to protect slavery and at the time of its pro-
posal and partial ratification it was a subject of absorbing
interest, but after the adoption of the Thirteenth Amend-
ment it was generally forgotten. Whether an amendment

---

[1] Some consideration had been given to the subject before, but with-
out any definite action. Cong. Globe, 39th Cong., 1st sess., 2771;
40th Cong., 3d sess., 912, 1040, 1309–1314.

[2] Watson on the Constitution, vol. 2, pp. 1676–1679; House Doc.,
54th Cong., 2d sess., No. 353, pt. 2, p. 300.

[3] House Doc., 54th Cong., 2d sess., No. 353, pt. 2, p. 317 (No. 243);
Ohio Senate Journal, 1873, pp. 590, 666-667, 678; Ohio House Journal,
1873, pp. 848, 849. A committee charged with the preliminary con-
sideration of the joint resolution reported that they were divided in
opinion on the question of the validity of a ratification after so great
a lapse of time.

[4] House Doc., 54th Cong., 2d sess., No. 353, pt. 2, pp. 300, 320
(No. 295), 329 (No. 399).

[5] 12 Stat. 251; House Doc., 54th Cong., 2d sess., No. 353, pt. 2, pp.
195–197, 363 (No. 931), 869 (No. 1025).

proposed without fixing any time for ratification, and which after favorable action in less than the required number of States had lain dormant for many years, could be resurrected and its ratification completed had been mooted on several occasions, but was still an open question.

These were the circumstances in the light of which Congress in proposing the Eighteenth Amendment fixed seven years as the period for ratification. Whether this could be done was questioned at the time and debated at length, but the prevailing view in both houses was that some limitation was intended and that seven years was a reasonable period.[1]

That the Constitution contains no express provision on the subject is not in itself controlling; for with the Constitution, as with a statute or other written instrument, what is reasonably implied is as much a part of it as what is expressed.[2] An examination of Article V discloses that it is intended to invest Congress with a wide range of power in proposing amendments. Passing a provision long since expired,[3] it subjects this power to only two restrictions: one that the proposal shall have the approval of two-thirds of both houses, and the other excluding any amendment which will deprive any State, without

---

[1] Cong. Rec., 65th Cong., 1st sess., pp. 5648–5651, 5652–5653, 5658–5661; 2d sess., pp. 423–425, 428, 436, 443, 444, 445–446, 463, 469, 477–478.

[2] *United States* v. *Babbit*, 1 Black, 55, 61; *Ex parte Yarbrough*, 110 U. S. 651, 658; *McHenry* v. *Alford*, 168 U. S. 651, 672; *South Carolina* v. *United States*, 199 U. S. 437, 451; *Luria* v. *United States*, 231 U. S. 9, 24; *The Pesaro*, 255 U. S. 216.

[3] Article V, as before shown, contained a provision that "No amendment which shall be made prior to the year one thousand eight hundred and eight shall in any manner affect the first and fourth clauses in the ninth section of the first article." One of the clauses named covered the migration and importation of slaves and the other deals with direct taxes.

its consent, of its equal suffrage in the Senate.[1] A further mode of proposal—as yet never invoked—is provided, which is, that on the application of two-thirds of the States Congress shall call a convention for the purpose. When proposed in either mode amendments to be effective must be ratified by the legislatures, or by conventions, in three-fourths of the States, "as the one or the other mode of ratification may be proposed by the Congress." Thus the people of the United States, by whom the Constitution was ordained and established, have made it a condition to amending that instrument that the amendment be submitted to representative assemblies in the several States and be ratified in three-fourths of them. The plain meaning of this is (a) that all amendments must have the sanction of the people of the United States, the original fountain of power, acting through representative assemblies, and (b) that ratification by these assemblies in three-fourths of the States shall be taken as a decisive expression of the people's will and be binding on all.[2]

We do not find anything in the Article which suggests that an amendment once proposed is to be open to ratification for all time, or that ratification in some of the States may be separated from that in others by many years and yet be effective. We do find that which strongly suggests the contrary. First, proposal and ratification are not treated as unrelated acts but as succeeding steps

[1] When the federal convention adopted Article V a motion to include another restriction forbidding any amendment whereby a State, without its consent, would "be affected in its internal police " was decisively voted down. The vote was: yeas 3—Connecticut, New Jersey, Delaware; nays 8—New Hampshire, Massachusetts, Pennsylvania, Maryland, Virginia, North Carolina, South Carolina, Georgia. Elliot's Debates, vol. 5, pp. 551, 552.

[2] See *Martin* v. *Hunter's Lessee,* 1 Wheat. 304, 324–325; *McCulloch* v. *Maryland,* 4 Wheat. 316, 402–404; *Cohens* v. *Virginia,* 6 Wheat. 264, 413–414; *Dodge* v. *Woolsey,* 18 How. 331, 347–348; *Hawke* v. *Smith,* 253 U. S. 221; Story on the Constitution, 5th ed., §§ 362–363, 463–465.

in a single endeavor, the natural inference being that they are not to be widely separated in time. Secondly, it is only when there is deemed to be a necessity therefor that amendments are to be proposed, the reasonable implication being that when proposed they are to be considered and disposed of presently. Thirdly, as ratification is but the expression of the approbation of the people and is to be effective when had in three-fourths of the States, there is a fair implication that it must be sufficiently contemporaneous in that number of States to reflect the will of the people in all sections at relatively the same period, which of course ratification scattered through a long series of years would not do. These considerations and the general purport and spirit of the Article lead to the conclusion expressed by Judge Jameson [1] "that an alteration of the Constitution proposed today has relation to the sentiment and the felt needs of today, and that, if not ratified early while that sentiment may fairly be supposed to exist, it ought to be regarded as waived, and not again to be voted upon, unless a second time proposed by Congress." That this is the better conclusion becomes even more manifest when what is comprehended in the other view is considered; for, according to it, four amendments proposed long ago—two in 1789, one in 1810 and one in 1861—are still pending and in a situation where their ratification in some of the States many years since by representatives of generations now largely forgotten may be effectively supplemented in enough more States to make three-fourths by representatives of the present or some future generation. To that view few would be able to subscribe, and in our opinion it is quite untenable. We conclude that the fair inference or implication from Article V is that the ratification must be within some reasonable time after the proposal.

Of the power of Congress, keeping within reasonable

---

[1] Jameson on Constitutional Conventions, 4th ed., § 585.

limits, to fix a definite period for the ratification we entertain no doubt. As a rule the Constitution speaks in general terms, leaving Congress to deal with subsidiary matters of detail as the public interests and changing conditions may require; [1] and Article V is no exception to the rule. Whether a definite period for ratification shall be fixed so that all may know what it is and speculation on what is a reasonable time may be avoided, is, in our opinion, a matter of detail which Congress may determine as an incident of its power to designate the mode of ratification. It is not questioned that seven years, the period fixed in this instance, was reasonable, if power existed to fix a definite time; nor could it well be questioned considering the periods within which prior amendments were ratified.

The provisions of the act which the petitioner was charged with violating and under which he was arrested (Title II, §§ 3, 26) were by the terms of the act (Title III, § 21) to be in force from and after the date when the Eighteenth Amendment should go into effect, and the latter by its own terms was to go into effect one year after being ratified. Its ratification, of which we take judicial notice, was consummated January 16, 1919. [2] That the Secretary of State did not proclaim its ratification until January 29, 1919, [3] is not material, for the date of its consummation, and not that on which it is proclaimed, controls. It follows that the provisions of the act with which the petitioner is concerned went into effect January

---

[1] *Martin* v. *Hunter's Lessee*, 1 Wheat. 304, 326; *McCulloch* v. *Maryland*, 4 Wheat. 316, 407.

[2] Sen. Doc., No. 169, 66th Cong., 2d sess.; Ark. Gen. Acts, 1919, p. 512; Ark. House Journal, 1919, p. 10; Ark. Sen. Journal, 1919, p. 16; Wyo. Sen. Journal, 1919, pp. 26–27; Wyo. House Journal, 1919, pp. 27–28; Mo. Sen. Journal, 1919, pp. 17–18; Mo. House Journal, 1919, p. 40.

[3] 40 Stat. 1941.

16, 1920. His alleged offense and his arrest were on the following day; so his claim that those provisions had not gone into effect at the time is not well grounded.

*Final order affirmed.*