## BELLAIRE, BENWOOD & WHEELING FERRY CO. v. INTERSTATE BRIDGE CO. et al.

### No. 2927.

Circuit Court of Appeals, Fourth Circuit.

April 8, 1930.

John C. Nichols, of Wheeling, W. Va. (James T. Miller, of Moundsville, W. Va., on the brief), for appellant.

Charles McCamic, of Wheeling, W. Va. (McCamic & Clarke, Jay T. McCamic, and James Morgan Clarke, all of Wheeling, W. Va., on the brief), for appellees.

Before PARKER and NORTHCOTT, Circuit Judges, and HAYES, District Judge.

NORTHCOTT, Circuit Judge.

This is a suit in equity, instituted by appellant in the circuit court of Marshall county, W. Va., in August, 1925, seeking to enjoin the appellees from appropriating land claimed by the appellant, and from interfering with the franchise and rights of a ferry operated by appellant, in the erection of a bridge over and across the Ohio river, from Benwood, W. Va., to Bellaire, Ohio. The bill also prays that the "appellees, their officers, agents and employees, be restrained, inhibited and enjoined from placing, erecting or constructing its said piers or abutments for said bridge or other obstructions in the course or channel heretofore and now so continuously and necessarily used by the plaintiff in the operation of its said boats and vessels over and across said Ohio River between its said ferry landing on its lands in the City of Benwood, West Virginia, and its landing on the Ohio shore of said river, in the said City of Bellaire."

The bill alleges, among other things, that appellant is the owner of land in the city of Benwood, Marshall county, W. Va., upon which appellees were constructing certain piers for said bridge, and that appellees, without having obtained the right to do so and without paying appellant any just compensation therefor, had entered upon and taken possession of appellant's land situated on the banks of the said Ohio river; that appellant was also the owner of a ferry across said river, between the above-named cities, that had been in operation for more than fifty years, and had traversed a certain channel across said river; that the piers for said bridge would obstruct appellant's navigation of said Ohio river, and thereby render it impossible or exceedingly dangerous for appellant to operate said ferry across said river.

Before any motion was made for a temporary restraining order the appellees moved the court to remove the suit to the District Court of the United States for the Northern District of West Virginia, and filed a petition, supporting this motion, alleging that the suit was of a civil nature involving questions of law arising under the Constitution and laws of the United States, in that the construction of a bridge over navigable waters was involved.

The petition sets out that the bridge in question was being erected by an Act of Congress, approved March 18, 1924 (43 Stat. 24); that the erection of said bridge had been approved by the Chief of Engineers of the War Department and the Secretary of War, and that the council of the city of Benwood had passed an ordinance authorizing the construction of said bridge. The petition also avers that under the Act of March 23, 1906, said bridge should be recognized and known as a post route, and that said Act of March 23, 1906 (33 USCA §§ 491, 492), 34 Statute at Large, 84, reserves certain rights to the United States with regard to the construction, maintenance, and repair of, without any charge therefor, telegraph and telephone lines across and upon said bridge and its approaches.

Sections 491 and 492, above referred to, read as follows:

"Section 491. When, after March 23, 1906, authority is granted by Congress to any persons to construct and maintain a bridge across or over any of the navigable waters of the United States, such bridge shall not be built or commenced until the plans and specifications for its construction, together with such drawings of the proposed construction and such map of the proposed location as may be required for a full understanding of the subject, have been submitted to the Secretary of War and Chief of Engineers for their approval, nor until they shall have approved such plans and specifications and the location of such bridge and accessory works; and when the plans for any bridge to be constructed under the provisions of this chapter * * * have been approved by the Chief of Engineers and by the Secretary of War it shall not be lawful to deviate from such plans, either before or after completion of the structure, unless the modification of such plans has previously been submitted to and received the approval of the Chief of Engineers and of the Secretary of War.

"§ 492. Any bridge built in accordance with the provisions of this chapter * * * shall be a lawful structure and shall be recognized and known as a post route, upon which no higher charge shall be made for the transmission over the same of the mails, the troops, and the munitions of war of the United States than the rate per mile paid for the transportation over any railroad, street railway, or public highway leading to said bridge; and the United States shall have the right to construct, maintain, and repair, without any charge therefor, telegraph and telephone lines across and upon said bridge

and its approaches; and equal privileges in the use of said bridge and its approaches shall be granted to all telegraph and telephone companies."

The petition further alleged that the requirements of the United States with regard to the erection of the bridge had been fully complied with; that the construction of the West Virginia end of said bridge was overhead along a street of the said city of Benwood, and that said bridge was in every respect a lawful bridge.

The circuit court of Marshall county, W. Va., entered an order on the 10th day of August, 1925, removing the cause to the District Court of the United States for the Northern District of West Virginia. In September, 1925, appellant moved in the District Court to remand the cause, which motion was overruled by an order entered on the 2d day of March, 1926. Thereupon appellees filed their joint and several answer, alleging, among other things, want of equity in the bill of complaint, and denying that plaintiff owned the land which was being used in the construction of the bridge and its piers. The answer further alleged that the piers were being constructed in the Ohio river below low-water mark, and at a point in said river that would be covered by a street of said city of Benwood extended to low-water mark on the Ohio shore, one of the boundaries of said city. The answer further sets up that Congress authorized the construction of said bridge, and the Act of Congress of March 23, 1906, regulated the construction of bridges over navigable waters. The answer further states that the bridge was being constructed under authority of the Chief of Engineers of the War Department and the Secretary of War, and was in every respect a lawful bridge.

The answer denied that appellant had any rights in the navigation of the said Ohio river, and denied that appellant was unlawfully interfered with by erection of said bridge and piers. The answer further alleged that the Ohio river is a navigable stream, and that the exclusive jurisdiction as to control of navigation thereon is in the United States government, under article 1, § 8, paragraph 3, of the Constitution of the United States.

By stipulation of counsel and by a decree entered thereon on the 6th day of May, 1927, it was ordered that the evidence of witnesses in said suit be taken in the form of depositions and that said cause be heard on such depositions regularly taken and filed. The cause was argued and submitted for final decree on the 11th day of June, 1928, at which time it was stipulated that the bridge had been completely constructed and was in operation under tolls established by the authority of the United States; and that the steam ferryboat that was in operation at the time of the bringing of this suit had been discontinued and no ferry had been in operation since some time in the month of March, 1928; and that witnesses for the appellant would testify that the reason said boat is not in operation is that it was condemned and ordered out of commission by the authorities of the United States owing to an injury to the hull of the boat caused by coming in contact with one of the piers of defendant bridge company, and that the boat was being reconditioned for service.

The court below, by a decree entered on the 6th day of September, 1928, dismissed the bill of complaint, from which action this appeal was taken.

Two questions are raised by appellant on appeal, first, that the court below erred in overruling plaintiff's motion to remand the cause to the state court, and second, that the court erred in dismissing plaintiff's bill of complaint.

As to the question of the jurisdiction of the federal court, we find, upon an investigation of the authorities, that a number of cases, in which the matter of the construction of bridges across navigable waters or the erection of wharves therein is involved, have been decided by the Supreme Court. Among them are Miller v. New York, 109 U. S. 385, 3 S. Ct. 228, 229, 27 L. Ed. 971; New Orleans, etc., v. Mississippi, 102 U. S. 135, 26 L. Ed. 96; Cummings v. Chicago, 188 U. S. 410, 23 S. Ct. 472, 47 L. Ed. 525; Wheeling Bridge Case, 13 How. (54 U. S.) 518, 14 L. Ed. 249; Newport & Cincinnati Bridge Co. v. United States, 105 U. S. 470, 475, 26 L. Ed. 1143.

The question of the erection of a bridge across the Ohio river was considered by this court in the Parkersburg Branch R. Case, 143 F. 224.

In none of these cases the question of jurisdiction seems to have been raised, and there is no direct discussion of this point, yet it seems apparent, upon a careful study of at least some of them, that jurisdiction must have been had because of the fact that the erection of a bridge over navigable waters is a question involving the law of the United States.

The Supreme Court has held that a suit involving the question of the right to con-

struct a dock in a navigable river under an act of Congress and a permit from the Secretary of War is one over which the federal courts have jurisdiction. Cummings v. Chicago, supra.

The power of Congress to regulate the use of navigable waters is unquestioned.

"The plaintiff only shares in the public right. He had no right against the public. The sovereign had the absolute control of it, and could regulate, enlarge, limit or even destroy it, as he might deem best for the whole public and this without making or providing for any compensation to such individuals as might be inconvenienced or damaged thereby." Parkersburg Branch R. Case, supra. See, also, Henderson Bridge Co. v. City of Henderson, 173 U. S. 592, 19 S. Ct. 553, 43 L. Ed. 823; Miller v. New York, supra.

Likewise the power of Congress over navigation is supreme. Gibson v. United States, 166 U. S. 269, 17 S. Ct. 578, 41 L. Ed. 996; Economy Light & Power Co. v. United States, 256 U. S. 113, 41 S. Ct. 409, 65 L. Ed. 847.

The courts will take judicial notice of the laws of the United States and of the fact that bridges cannot be constructed over navigable streams except by the authorization of Congress. United States v. Forbes (D. C.) 259 F. 585, affirmed Forbes v. United States (C. C. A.) 268 F. 273; Dillon v. Gloss, 256 U. S. 368, 41 S. Ct. 510, 65 L. Ed. 994; In re Dunn, 212 U. S. 374, 29 S. Ct. 299, 53 L. Ed. 558; Spokane Falls & Northern Railway Co. v. Ziegler, 167 U. S. 65, 17 S. Ct. 728, 42 L. Ed. 79.

In Newport & Cincinnati Bridge Co. v. United States, supra, it is said:

"That the Ohio is one of the navigable rivers of the United States must be conceded. It forms a boundary of six States, and the commerce upon its waters is very large. * * *

"The paramount power of regulating bridges that affect the navigation of the navigable waters of the United States is in Congress. It comes from the power to regulate commerce with foreign nations and among the States"—citing cases.

The Ohio river is a navigable stream. Wheeling Bridge Case, supra.

"A suit does not arise under the constitution or laws of the United States, unless the Federal question appears clearly, not merely by inference, upon the face of the plaintiff's initial pleading in the statement of his own case, and in a necessary allegation in such pleading." Fos. Fed. Prac. § 24 (6th Ed.) p. 77; Western Union Tel. Co. v. Ann Arbor R. Co., 178 U. S. 239, 20 S. Ct. 867, 44 L. Ed. 1052; Tennessee v. U. & P. Bank, 152 U. S. 454, 14 S. Ct. 654, 38 L. Ed. 511; Wise v. Nixon (C. C.) 78 F. 203; California O. & G. Co. of Arizona v. Miller (C. C.) 96 F. 12.

Here the bill sets up, among other things, the right to operate the ferry across the river, and seeks to enjoin the erection of the bridge as an obstacle to that operation. We are of the opinion that this clearly shows "upon the face of the plaintiff's initial pleading" that laws of the United States are directly brought into question.

In Patton v. Brady, 184 U. S. 608, 612, 22 S. Ct. 493, 494, 46 L. Ed. 713, the rule is stated by Mr. Justice Brewer: "That a case arises under the Constitution of the United States when the right of either party depends on the validity of an act of Congress is clear. It was said by Chief Justice Marshall that 'a case in law or equity consists of the right of the one party, as well as of the other, and may truly be said to arise under the Constitution or a law of the United States whenever its correct decision depends on the construction of either' (Cohens v. Virginia, 6 Wheat. 264, 379, 5 L. Ed. 257, 285); and again, when 'the title or right set up by the party may be defeated by one construction of the Constitution or law of the United States, and sustained by the opposite construction.' Osborn v. Bank of United States, 9 Wheat. 738, 822, 6 L. Ed. 204, 224. See, also, Little York Gold-Washing & Water Co. v. Keyes, 96 U. S. 199, 201, 24 L. Ed. 656, 658; Tennessee v. Davis, 100 U. S. 257, 25 L. Ed. 648; White v. Greenhow, 114 U. S. 307, 5 S. Ct. 923, 962, 29 L. Ed. 199; New Orleans, M. & T. R. Co. v. Mississippi, 102 U. S. 135, 139, 26 L. Ed. 96, 98."

If these allegations raise a federal question, it makes no difference that other questions of general law are also involved. Connor v. Scott, 4 Dill. 242, Fed. Cas. No. 3119; Mastin v. Chicago, R. I. & P. Ry. Co. (C. C. 1903) 123 F. 827, 829, 830.

Congress having the exclusive jurisdiction over navigable waters, and having the sole right to permit the erection of bridges across the same, it would seem to be inconsistent not to give to the federal courts the power to hear questions involving the construction of such bridges. We are of the opinion that a suit seeking to enjoin the erection of a bridge

over a navigable stream, which is the boundary line between two states, and the erection of which bridge had been authorized by Congress and approved by the Secretary of War, and with respect to which bridge the United States retains certain rights and privileges, and which bridge is a post route, raises a question under the laws of the United States. The action of the court below in denying the motion to remand was correct.

After a hearing upon the merits, at which evidence was introduced, the learned judge below found against appellant, and in September, 1928, entered a decree dismissing the bill. It has been long settled, in this court that the finding of the District Court having support in the evidence will not be reversed unless we reach the conclusion that that finding is clearly wrong. In Virginia Shipbuilding Corporation v. United States, 22 F.(2d) .38, 51, Judge Parker, speaking for this court, said: "It is settled that we will not reverse a finding of the District Court having support in the evidence unless we think that the Judge has misapprehended the evidence or gone against the clear weight thereof, or, in other words, unless we think that his finding was clearly wrong."

In other cases this court has laid down the same rule. Wolf Mineral Process Corporation v. Minerals Separation North American Corporation (C. C. A.) 18 F.(2d) 483; International Organization, United Mine Workers of America et al. v. Red Jacket Consol. Coal & Coke Co. et al. (C. C. A.) 18 F.(2d) 839. See, also, Roberts v. Southern Surety Co. (C. C. A.) 33 F.(2d) 501.

The court below was right in entering the decree dismissing the bill for several reasons. The bridge was a lawful one, being erected under authorization by proper authorities in control of such matters. On this point the Supreme Court said in Miller v. New York, supra: "We approve of its action and decree. The erection of the bridge at the elevation proposed was authorized by the action of both the state and federal governments. It would, therefore, when completed, be a lawful structure. If, as now completed, it obstructs, in any respect, the navigation of the river, it does so merely to an extent permitted by the only authorities which could act upon the subject. And the injury then apprehended, and alleged by the plaintiff and now sustained, is only such as is common to all persons engaged in commerce on the river and doing business on its banks, and therefore not the subject of judicial cognizance."

The laws of West Virginia, under which appellant was operating its ferry, provide: "But no ferry privileges or franchises shall preclude the erection of bridges over any water-course, or entitle the owner of such privileges or franchises to damages in case of the erection of a bridge or bridges over any water-course." Section 6, c. 44, Code of West Virginia.

As to the boundary line claimed by appellant, the evidence was conflicting, and an examination of the testimony leads to the conclusion that the appellant failed to establish the boundary as claimed by it.

The evidence also shows that the piers on the West Virginia side of the bridge were being constructed on land within the limits of a street of the city, extended to the boundary line of the city, and certainly the construction of a bridge leading into a street, which bridge was to be used for travel from and onto the street, is a proper use of the easement for street purposes, even though the fee remained in the owner of the land.

In addition to these reasons, any one of which would sustain the decree dismissing the bill, we think this case is controlled by the recent decision of the Supreme Court in White et al. v. Sparkill Realty Corporation et al., 280 U. S. 500, 50 S. Ct. 186, 189, 74 L. Ed. ——, decided February 24, 1930, in which Mr. Justice Sutherland in a well considered opinion, discusses the question of the jurisdiction of a court of equity in cases involving the right of possession to real estate, and lays down the rule that "an injunction will not be used to take property out of the possession of one party and put it into that of another." The bill here shows that the defendants, through their agents and contractors, at the time of the filing of the bill, had already "entered upon and taken possession of the land owned by said plaintiff." The bill also prays that the appellee be required "to restore to the plaintiff the use, possession and enjoyment of its said lands."

The court in White et al. v. Sparkill Realty Corporation et al., supra, after discussing the authorities on this point, including a number of decisions of the Supreme Court, says:

"The present case is entirely different. Here the purpose of the suit is to eject appellants from lands which for five months had been and still were in their exclusive possession, under claim of right and in pursuance of a statute which gives color of title, notwithstanding the challenge to its constitution-

ality. See Doe on dem. of Trustees, etc., v. Newbern Academy, 9 N. C. 233. That challenge does not require resort to a suit in equity. It will be, open for determination in an action at law which is the appropriate remedy.

"The decree below must be reversed, and the cause remanded, with instructions to dismiss the bill, but without prejudice to an action at law in a court of competent jurisdiction."

The action of the court below in dismissing the bill was proper, and the decree is accordingly affirmed.