**ACME MARKETS, INC., a body corporate,**

v.

**RETAIL STORE EMPLOYEES UNION LOCAL NO. 692, AFL–CIO.**

**Civ. No. 15653.**

United States District Court
D. Maryland.

July 21, 1964.

Robert L. Sullivan, Jr., Barry I. Robinson, Sklar & Sullivan, Baltimore, Md. (Blank, Rudenko, Klaus & Rome, Philadelphia, Pa., of counsel), for plaintiff.

S. G. Lippman, Ira Lechner, Tim L. Bornstein, Washington, D. C., and Melvin Steinberg, Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

Plaintiff seeks remand to the Circuit Court of Baltimore City of this suit in equity for an injunction which defendant removed therefrom.

The bill of complaint filed in the State Court on June 22, 1964, alleges that plaintiff, a Delaware corporation, is engaged in the retail sale of food and groceries in many locations in Baltimore City and elsewhere in the State of Maryland; that in April 1964, in support of an economic strike, defendant[1] began to picket plaintiff's stores, which were thereupon closed; that on June 17 plaintiff decided to reopen its stores and on June 19 solicited applications for employment; that on six occasions between June 19 and June 22 defendant committed specified acts of violence against such applicants in Baltimore City; that defendant engaged in mass picketing, as a result of which it was "becoming increasingly difficult to maintain public order in and about plaintiff's stores and places of business"; that the alleged illegal acts of defendant "are so enmeshed with the picketing as to make them inseparable"; that irreparable injury had been and would be sustained by plaintiff, and "a large number of persons" would be intimidated, threatened and coerced, unless the unlawful actions of defendant were restrained.

The bill of complaint prayed for: (1) an order temporarily and permanently restraining defendant from picketing at plaintiff's stores and places of business; (2) an order restraining defendant from placing or allowing more than four pickets in and about any store; (3) an order restraining defendant from "coercing.

---

1. The term "defendant" will be used herein to include defendant and its agents, members and representatives, unless the context indicates otherwise.

intimidating, threatening, warning, assaulting, battering or in any way interfering with any persons in and about [plaintiff's] stores or places of business"; and (4) other and further relief.

On the allegations of the bill, supported by an affidavit made on information and belief, the State Court issued a temporary restraining order, prohibiting all picketing of plaintiff's stores and places of business by defendant and restraining defendant from coercing, intimidating, threatening, warning, assaulting, battering or in any way interfering with any person in and about plaintiff's stores or places of business.

On the following day, June 23, defendant sought unsuccessfully to secure a modification of the order. On June 24 defendant entered an appeal to the Court of Appeals of Maryland, which, on plaintiff's motion, was dismissed by that Court the same day. During the hearing on plaintiff's prayer for a preliminary injunction, which was begun the same day, defendant filed a petition to remove the case to this Court. Immediately upon receiving notice thereof the State Court stopped its hearing. Late that afternoon, following a hearing before two judges of this District Court, this Court announced that pending decision of a motion to remand, which plaintiff's attorneys said they intended to file, this Court would enforce the State Court order, modified (1) to limit the injunction to acts which, in Youngdahl v. Rainfair, Inc., 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957), the Supreme Court held to have been properly enjoined, and (2) to limit the number of pickets at each store and at each entrance. An order to that effect was signed that evening, and has been continued in effect by agreement of the parties. The Court is advised that the order, so modified, has been observed.

On July 1, plaintiff filed its motion for remand. Argument thereon has been heard on several occasions, since counsel for defendant raised new points from time to time and requested leave to file additional briefs.

Plaintiff's contention that defendant waived its right to remove is without merit. 1A Moore, Federal Practice, 2d ed. ¶ 0.157[9], and cases cited therein.

Defendant recognizes that because it is a citizen of Maryland it cannot base a right to remove on the ground of diversity of citizenship, and must show that this is a civil action of which the district courts have original jurisdiction founded on a claim or right arising under the laws of the United States. 28 U.S.C.A. 1441(a) and (b).[2]

Defendant has presented several arguments or theories which it has had to abandon upon further study of the authorities.[3] Defendant now rests upon the contention that this case arises under a law of the United States because its correct decision depends upon the construction of the National Labor Relations Act (NLRA). Although plaintiff has

2. 28 U.S.C.A. 1441(a) and (b), as enacted in 1948, read as follows:

"§ 1441. Actions removable generally

"(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

"(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."

3. E. g. Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311 (1940) and Pennington v. United Mine Workers, 6 Cir., 325 F.2d 804 (1963) with respect to the possible applicability of the Sherman Act; Crawford v. East Asiatic Co., S.D.Cal., 156 F.Supp. 571 (1958), Eriksen v. Moore Mill & Lumber Co., D.Ore., 157 F.Supp. 888 (1958), and Monroe v. United Carbon Co., 5 Cir., 196 F.2d 455, among others, with respect to the changes made by the Code of 1948.

based its complaint on the alleged acts of violence, which traditionally give rise to a local cause of action, see Allen-Bradley Local v. Wisconsin Employment Relations Board, 315 U.S. 740, 749, 62 S.Ct. 820, 86 L.Ed. 1154 (1942), Youngdahl v. Rainfair, Inc., 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957), and other cases discussed below, defendant argues that plaintiff's reliance on the enmeshment theory necessarily brings into play Section 7 of the NLRA, 29 U.S.C.A. § 157.

Defendant relies on the language of Blease v. Safety Transit Co., 4 Cir., 50 F.2d 852 (1931), where Chief Judge Parker said: "A case is said to arise under the Constitution and laws of the United States ' "whenever its correct decision depends upon the construction of either" * * * or when "the title or right set up by the party may be defeated by one construction of the Constitution or law of the United States, or sustained by the opposite construction." ' Little York Gold Washing & Water Co. v. Keyes, 96 U.S. 199, 201, 24 L.Ed. 656; Cohens v. Virginia, 6 Wheat. [264] 379, 5 L.Ed. 257; Osborn v. Bank [of U. S.], 9 Wheat. [738], 822, 6 L.Ed. 204; Patton v. Brady, 184 U.S. 608, 22 S.Ct. 493, 46 L.Ed. 713; Bellaire, Benwood & Wheeling Ferry Co. v. Interstate Bridge Co. (C.C.A. 4th) 40 F.(2d) 323." 50 F.2d at 854. The complaint filed in the State Court by the South Carolina Railroad Commission in the Blease case sought to enjoin the transit company from operating any bus on the roads of the state without obtaining a certificate of public convenience and necessity, whether or not the buses were engaged in interstate commerce. Immediately after the passage, quoted above, the following statement appeared: "And a suit which asserts the right on the part of a state to regulate interstate commerce raises a question under the Constitution of the United States; for the exclusive power to regulate such commerce is vested by the Constitution in Congress." 50 F.2d at 854–855.

The opinion in the Blease case must be considered in light of the development of the law, as shown by decisions of the Supreme Court and later decisions of the Fourth Circuit.

Article III, Section 2 of the Constitution provides in pertinent part: "The judicial Power shall extend to all Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority; * * * *"

In Cohens v. Virginia, 6 Wheat. 264, 5 L.Ed. 257 (1821), construing this constitutional provision in a case which came to the Supreme Court from a state court, Chief Justice Marshall said: "A case in law or equity consists of the right of the one party, as well as of the other, and may truly be said to arise under the constitution or a law of the United States, whenever its correct decision depends on the construction of either." 6 Wheat. at 379.

A few years later, in Osborn v. Bank of the United States, 9 Wheat. 738, 6 L.Ed. 204 (1824), construing the same provision in a case instituted in a federal circuit court pursuant to a statute specifically giving such courts jurisdiction in suits by and against the Bank, the Chief Justice said: "A cause may depend on several questions of fact and law. Some of these may depend on the construction of a law of the United States; others on principles unconnected with that law. If it be a sufficient foundation for jurisdiction, that the title or right set up by the party, may be defeated by one construction of the constitution or law of the United States, and sustained by the opposite construction, provided the facts necessary to support the action be made out, then all the other questions must be decided as incidental to this, which gives that jurisdiction. Those other questions cannot arrest the proceedings. Under this construction, the judicial power of the Union extends, effectively and beneficially, to that most important class of cases, which depend on

the character of the cause." 9 Wheat. at 822.

These statements were quoted and followed in early removal cases, such as Little York Gold Washing & Water Co. v. Keyes, 96 U.S. 199, 201, 24 L.Ed. 656 (1877). A rather limited right of removal had been given in the First Judiciary Act in 1789, but after the Civil War, the right was expanded, particularly by a statute in 1875, which permitted removal of virtually all cases within the constitutional judicial power, subject only to the then-required jurisdictional amount. This privilege was narrowed in 1887 by a statute which raised the jurisdictional amount, limited removal to defendants, and was construed as barring removal where a defendant relied on federal law as his defense. State of Tennessee v. Union and Planters Bank, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1899); Great Northern Railway Company v. Alexander, 246 U.S. 276, 282, 38 S.Ct. 237, 62 L.Ed. 713 (1918); Wright on Federal Courts, sec. 38, p. 110. The present removal statute is closely derived from the 1887 legislation.

Since 1887 the Supreme Court has given an increasingly narrow interpretation to the words "arising under the Constitution or laws of the United States," as those words appear in the successive removal statutes. In Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908), the Court said: "It is the settled interpretation of these words, as used in this statute, conferring jurisdiction, that a suit arises under the Constitution and laws of the United States only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or that Constitution. It is not enough that the plaintiff alleges some anticipated defense to his cause of action, and asserts that the defense is invalidated by some provision of the Constitution of the United States. Although such allegations show that very likely, in the course of the litigation, a question under the Constitution would

arise, they do not show that the suit, that is, the plaintiff's original cause of action, arises under the Constitution." 211 U.S. at 152, 29 S.Ct. at 43. The Court cited a long line of cases, beginning with Metcalf v. City of Watertown, 128 U.S. 586, 9 S.Ct. 173, 32 L.Ed. 543 (1888), and relied particularly on State of Tennessee v. Union and Planters Bank, supra.

In Thompson v. Standard Oil of New Jersey, 4 Cir., 67 F.2d 644 (1933), cert. den. 292 U.S. 631, 54 S.Ct. 640, 78 L. Ed. 1485 (1934). Judge Soper discussed the development of the law, and said: "Since the Judiciary Act of 1887 and 1888, it has been the uniform holding of the Supreme Court that no case may be removed from a state to a federal court on the ground that it arises under the Constitution or laws of the United States, unless it might have been brought originally in a federal court upon that ground under section 24(1) of the Judicial Code, 28 USCA § 41(1). Therefore, a case is not now removable unless the plaintiff's declaration or bill shows by distinct averments that his cause of action, as distinguished from the defense thereto, is based upon a right under the Constitution or laws of the United States, or treaties made under their authority." 67 F.2d at 646.

Patton v. Brady, Executrix, 184 U.S. 608, 22 S.Ct. 493, 46 L.Ed. 713 (1902), marred the uniformity of the opinions in removal cases. It harked back to the broad construction given the constitutional provision in Cohens v. Virginia and Osborn v. Bank of the United States. Patton v. Brady is significant because its teaching was followed in two early Fourth Circuit cases, Bellaire, Benwood and Wheeling F. Co. v. Interstate Bridge Co., 4 Cir., 40 F.2d 323 (1930), and Blease v. Safety Transit Co., supra (1931), and in Judge Parker's dissent in Thompson v. Standard Oil of New Jersey, 67 F.2d at 650 (1933).

Shortly after the Thompson case, the Supreme Court decided Gully v. First National Bank, 299 U.S. 109, 57 S.Ct.

96, 81 L.Ed. 70 (1936). Mr. Justice Cardozo, speaking for the Court, said:

"How and when a case arises 'under the Constitution or laws of the United States' has been much considered in the books. Some tests are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. Starin v. [City of] New York, 115 U.S. 248, 257 [6 S.Ct. 28, 29 L.Ed. 388]; First National Bank [of Canton] Pa. v. Williams, 252 U.S. 504, 512 [40 S.Ct. 372, 374, 64 L.Ed. 690]. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. * * * Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense." 299 U.S. at 112, 113, 57 S.Ct. at 97–98. Mr. Justice Cardozo also made the following statements, important to the consideration of the instant case: "Looking backward we can see that the early cases were less exacting than the recent ones in respect of some of these conditions." 299 U.S. at 113, 57 S.Ct. at 98. "Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit." Ibid, p. 115, 57 S.Ct. p. 99.

These principles were restated by the Supreme Court in Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S. Ct. 876, 94 L.Ed. 1194 (1950). The Court reviewed many earlier decisions, and stated: "These decisions reflect the current of jurisdictional legislation since the Act of March 3, 1875, 18 Stat. 470, first entrusted to the lower federal courts wide jurisdiction in cases 'arising under this Constitution, the Laws of the United States, and Treaties.' U.S.Const. Art. III, § 2. 'The change is in accordance with the general policy of these acts, manifest upon their face, and often recognized by this court, to contract the jurisdiction of the Circuit Courts [which

became the District Courts] of the United States.' * * * With exceptions not now relevant Congress has narrowed the opportunities for entrance into the federal courts, and this Court has been more careful than in earlier days in enforcing these jurisdictional limitations." 339 U.S. at 673, 70 S.Ct. at 880.

Since the decision of Gully v. First National Bank, supra, the Fourth Circuit has cited and followed the principles stated therein. Costanzo Coal. Mining Co. v. Weirton Steel Co., 150 F.2d 929, 933, 934 (1945); Miller v. Long, 152 F. 2d 196, 197 (1945). And in Allen v. Southern Ry. Co., W.D.N.C., 114 F.Supp. 72 (1953), Judge Parker, speaking for a three-judge court, said:

"We think that the case was improperly removed into this court as one arising under the Constitution and laws of the United States and that the motion to remand must be granted on the ground that the complaint does not set forth a cause of action so arising. The amendment to the Railway Labor Act of which we take judicial notice must unquestionably be considered in passing upon the case; but the complaint states no cause of action arising under that statute, the effect of which is to destroy any cause of action which plaintiff might otherwise have had under state law. In a very similar case where plaintiffs were asking injunctive relief under state law which conflicted with federal laws regulating interstate commerce and the argument was made that the case was removable because it was necessary that federal laws be considered in its decision, the Supreme Court held that the case should have been remanded on the ground that plaintiffs' cause of action did not arise under the federal laws. State of Arkansas v. Kansas & Texas Coal Co., 183 U.S. 185, 190, 22 S.Ct. 47, 49, 46 L.Ed. 144. The court said:

" 'But even assuming that the bill showed upon its face that the relief sought would be inconsistent with the power to regulate commerce or with regulations established by Congress, or with the 14th Amendment, as contend-

ed, it would only demonstrate that the bill could not be maintained at all, and not that the cause of action arose under the Constitution or laws of the United States.'" 114 F.Supp. at 73–74.

Judge Parker also quoted from Louisville & N. R. Co. v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126, Williams v. First National Bank, 216 U.S. 582, 30 S. Ct. 441, 54 L.Ed. 625, and Gully v. First National Bank, supra.

The principles announced in the more recent opinions of the Supreme Court and the Fourth Circuit must be applied by this Court in this case, as they were in Levitt & Sons, Inc. v. Prince George County CORE, D.Md., 221 F.Supp. 541 (1963) and Jackson v. Martin Co., D.Md., 180 F.Supp. 475 (1960). Particularly applicable here is the test laid down in Gully v. First National Bank, supra, namely: "To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action."

█ In the present case, plaintiff's bill of complaint filed in the State Court sought injunctive relief under State law based upon allegations of mass picketing, threats, coercion and violence against plaintiff's employees and applicants for employment. The Supreme Court has repeatedly held that although the National Labor Relations Board has exclusive jurisdiction over peaceful organized activity, the State Courts have the power to enjoin violence. Allen Bradley Local v. Wisconsin Board, 315 U.S. 740, 62 S. Ct. 820, 86 L.Ed. 1154 (1942); United Auto, Aircraft and Agr. Implement Workers of America v. Wisconsin Employment Relations Board, 351 U.S. 266, 76 S.Ct. 794, 100 L.Ed. 1162 (1956); Youngdahl v. Rainfair, Inc., 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957); cf. Garner v. Teamsters Union, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228 (1953); San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). If a record contains adequate proof that a pattern of violence has been established which is so enmeshed in the picketing that violence can only be prevented by enjoining all picketing, a State Court may be justified in entering such an injunction. Milk Wagon Drivers Union of Chicago, Local 753 v. Meadowmoor Dairies, Inc., 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836 (1941); Youngdahl v. Rainfair, Inc., supra. See also Angle v. Owsley, 332 S.W.2d 457, 461–462 (Mo. App.1959), and Ex Parte Dilley, 160 Tex. 522, 334 S.W.2d 425, 431–432 (Sup.Ct. Texas 1960).

█ If such enmeshment is not shown, a State Court is barred by the NLRA from enjoining peaceful picketing, although it may enjoin violence. 1A Moore's Federal Practice, 2d ed., ¶ 0.167 [7], p. 1001, et seq. The fact that plaintiff in this case has prayed for an injunction against all picketing does not give defendant a right to remove a case from a State Court under 28 U.S.C.A. § 1441, since the prayer was based upon allegations of violence, upon a claimed right under State law, and not upon a claimed right under any Federal statute. It is immaterial that the defendant is almost certain to raise a federal defense. Skelly Oil Co. v. Phillips Petroleum, supra; Gully v. First National Bank, supra, and authorities cited in those cases. It is equally immaterial that the plaintiff could have elected to proceed on a federal ground. Henry v. A. B. Dick Co., 224 U.S. 1, 14–17, 32 S.Ct. 364, 56 L.Ed. 645. "If the plaintiff decides not to invoke a federal right, his claim belongs in a state court." Pan American Petroleum Corp. v. Superior Court, 366 U.S. 656, 663, 81 S.Ct. 1303, 1307, 6 L. Ed.2d 584 (1961).

This is not a case, like those arising under sec. 301(a) of the Taft Hartley Act, 29 U.S.C.A. § 185(a) where the *exclusive* source of a petitioner's right to relief is federal law. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 456, 457, 77 S.Ct. 912, 1 L.Ed. 2d 972 (1957); Minkoff v. Scranton

**572**

Frocks, Inc., S.D.N.Y., 172 F.Supp. 870, 873 (1959); Jody Fair, Inc. v. Dubinsky, S.D.N.Y., 225 F.Supp. 695 (1964); Swift & Company v. United Packinghouse Workers, D.Colo., 177 F.Supp. 511 (1959); National Dairy Products Corporation v. Hefferman, E.D.N.Y., 195 F. Supp. 153 (1961); 1A Moore's Federal Practice, 2d ed., ¶ 0.160, pp. 474–476, ¶ 0.167[7], pp. 1007–9.

The following passage from Gully v. First National Bank is apposite: "We recur to the test announced in [People of] Puerto Rico v. Russell & Co. [288 U. S. 476, 53 S.Ct. 447, 77 L.Ed. 903 (1933)]. supra: 'The federal nature of the right to be established is decisive—not the source of the authority to establish it.' Here the right to be established is one created by the state. If that is so, it is unimportant that federal consent is the source of state authority. To reach the underlying law we do not travel back so far. By unimpeachable authority, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby. Louisville & Nashville R. Co. v. Mottley, supra. With no greater reason can it be said to arise thereunder because permitted thereby." 299 U.S. at 116, 57 S.Ct. at 99.

Finally, as Judge Parker said in Allen v. Southern Ry. Co., supra: "So long as plaintiff's cause of action does not arise under the laws of the United States, the case is not removable, even though when these laws are considered plaintiff has no cause of action and is not entitled to an injunction. The defendant in such case must rely for protection of his rights upon action by the state courts, which are just as much bound as are the federal courts to give effect to the laws of the United States, and in a case involving those laws are subject to review by the Supreme Court of the United States." 114 F.Supp. at 75.

An order will be entered remanding the case to the Circuit Court of Baltimore City.