## Rieser, Police Judge, et al. v. Ward.

## Same v. Bowman.

(Decided January 10, 1922.)

## Appeals from Jefferson Circuit Court (Common Pleas Branch, First Division).

1. Courts—Police Courts—Jurisdiction.—As by section 143, Constitution, the jurisdiction of the police court in each city and town of the state is confined to "cases of violation of municipal ordinances and bylaws occurring within the corporate limits of the city or town in which it is established, and such criminal jurisdiction within said limits as justices of the peace have," the police court of a city or town cannot, by an act of the General Assembly, be given jurisdiction of such offenses, or any offense, committed beyond or outside of its corporate limits. And this is so whether the act was passed before or after the adoption of the present Constitution; for if passed before, by the provisions of the Constitution, the act was abrogated or repealed when that instrument went into effect, and if passed afterward, it conflicts with the provisions of the Constitution regulating the jurisdiction of such courts, and, by reason thereof, would be void.

2. Courts—Police Courts—Jurisdiction.—The police court of the city of Oakdale has exclusive jurisdiction of an offense against any of its ordinances, or of a statute of the state of which justices of the peace have jurisdiction, committed on that part of "Southern Parkway" included as a street within its corporate limits as a city, notwithstanding the fact that the city of Louisville, before the incorporation of Oakdale as a city, had acquired the right to use the whole of Southern Parkway as a boulevard for travel to and from a park beyond Oakdale, of which it is the owner.

3. Prohibition—Jurisdiction of Police Court.—As the police court of Oakdale, and not that of the city of Louisville, has jurisdiction of the offense charged against each of the appellees, both committed, if committed at all, on that part of Southern Parkway within the corporate limits of Oakdale, the granting by the court below of a writ of prohibition in each of these cases to prevent the exercise of such jurisdiction by that court, was unauthorized.

O'NEAL & O'NEAL, GEORGE B. DOHLER and GARNETT & VANWINKLE for appellant.

STANLEY B. MAYER and M. H. THATCHER for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

As these two actions seeking the same relief against the one defendant, though each was brought by a separate

plaintiff, were together heard and determined in the court below, and the several appeals from the judgments of that court rendered in the cases have in like manner been considered by us, both will be disposed of in a single opinion. The two actions arose out of the arrest and subsequent attempted prosecution in the police court of Oakdale, a city of the fifth class, of the appellees, O. P. Ward and Clifford Bowman (plaintiffs in the court below) under warrants duly issued by the appellant, Joseph Rieser (defendant in the court below), then and now judge of the police court of the city of Oakdale, charging Ward with a violation of the provisions of chapter 90, Acts General Assembly, 1920, known as the "Kentucky Motor Vehicle" Statute; and Bowman with a violation of an ordinance of the city of Oakdale, passed by its council to conform to the provisions of that act, both the act and ordinance prescribing a penalty, by way of a fine, of not less than $10.00 nor more than $100.00 for running an automobile at a greater rate of speed than twenty miles an hour on streets in residential sections of Oakdale. The offense charged in each warrant was that the defendant named therein, in operating his automobile over a street or boulevard within the corporate boundaries and in a residential section of Oakdale, known as "Southern Parkway," ran it at a rate of speed greater than twenty miles an hour, thereby exceeding the maximum limit of speed fixed both by the statute and ordinance, *supra,* for running such vehicle on a street through a residential section of such city.

Challenging the jurisdiction of the Oakdale police court, and of the appellant as judge thereof, to issue the warrants in question, or to try them for the offenses therein charged, the appellees respectively brought these actions, each in his petition seeking of the circuit court a writ of prohibition to prevent the appellant as judge of the Oakdale police court from subjecting him to prosecution or trial for the offense charged in the warrant against him.

The appellant filed a general demurrer and answer to each of the petitions, and the issues were completed by the filing of a reply to each answer. Upon the submission of the two causes for trial on the respective motions of the appellees for the writ of prohibition, and the consideration by the circuit court of the evidence offered by the parties, which included certain agreed facts contained in

a writing filed, and others shown by exhibits made a part of the record, it rendered judgment granting each of the appellees the writ of prohibition prayed in his petition. Appellant complains of the judgments, and by these appeals seek their reversal.

The judgments of the court below seem to have been based on the theory that, although that part of Southern Parkway upon which each of the appellees committed the offense charged in the warrant against him, actually lies within the corporate limits of the city of Oakdale, it nevertheless is legally a part of and within the corporate limits of the city of Louisville, by virtue of which and the provisions of a statute enacted by the legislature in 1890, and re-enacted by that body in 1893, the police court of the city of Louisville was given and has exclusive jurisdiction of the offenses in question and to try the appellees for committing them, hence the police court of Oakdale does not possess and cannot exercise such jurisdiction.

It should be remarked that the following facts, material to a proper understanding of the controlling question presented by the appeals, do not appear to be disputed: (1) The offense with which each appellee is charged was committed on Southern Parkway, a boulevard 100 feet in width, passing through Oakdale, a city of the fifth class, and on a part of such boulevard lying wholly within its corporate limits. (2) Southern Parkway is a boulevard, dedicated to the use of the public for travel, connecting Third street in the city of Louisville with the territory four miles south thereof known as Jacob or Iroquois Park. (3) The city of Louisville through its board of park commissioners, by purchase and deed of conveyance acquired in 1890, 1891, for use as a public park, the title to the territory now included in Jacob or Iroquois Park, and with it the driveway, now known as Southern Parkway, upon which it later constructed and has since maintained, at its own expense, the present boulevard. (4) When the territory embracing Jacob or Iroquois Park and the Southern Parkway was acquired by the city of Louisville, Oakdale, though laid off into lots and streets as shown by plat, was not an incorporated municipality, but the Southern Parkway was then a driveway designated on the plat as one of its streets. (5) That while Oakdale has as a municipality exercised general control and police power over such

part of the Southern Parkway as lies within its corporate limits, it has been at no expense in maintaining it, except in the matter of providing electric arc lights at its intersection with certain other streets.   (6)   Oakdale was incorporated as a city in 1904, since which time it has maintained a municipal government such as appertains to a city of its class, including a police court, judge thereof, police force and such other officers and instrumentalities as are authorized by its charter.   (7)   That at the time of its incorporation Oakdale was given a fixed and definite boundary, which includes that part of Southern Parkway where each of the appellees is alleged to have committed the offense named in the warrant against him; and that the police court of Louisville has never issued a warrant or tried any one for an offense committed on that part of Southern Parkway lying within the corporate limits of Oakdale.

But, however viewed, only such of the uncontroverted facts referred to as serve to show beyond doubt that the offense with which each of the appellees stands charged was committed within the corporate limits of the city of Oakdale are really material here, as the question of jurisdiction in issue is one of law to be determined by the application of certain provisions of the Constitution and others of pertinent legislative enactment that have received judicial construction.   The Constitution, section 109, declares:

"The judicial power of the Commonwealth, both as to matters of law and equity, shall be vested in the Senate when sitting as a court of impeachment, and one supreme court (to be styled the Court of Appeals) and the courts established by this Constitution."   Section 135 provides:

"No courts save those provided for in this Constitution shall be established."

The Constitution then provides for the establishment of the Court of Appeals, circuit courts, county courts, quarterly courts, justices' courts, fiscal courts and police courts.   The police courts of the state, their jurisdiction and the territory in which the jurisdiction may be exercised are established and declared by section 143, Constitution, which provides:

"A police court may be established in each city and town in the state, with jurisdiction in cases of violation of municipal ordinances and bylaws *occurring within the corporate limits* of the city or town in which it is estab-

lished, and such criminal jurisdiction within said limits as justices of the peace have. The said courts may be authorized to act as examining courts, but shall have no civil jurisdiction; provided the General Assembly may confer civil jurisdiction on police courts in cities and towns of the fourth and fifth classes, and in towns of the sixth class having a population of 250 or more, which jurisdiction shall be uniform throughout the state and not exceed that of justices of the peace.''

Language cannot be made more explicit than that employed in the several sections of the Constitution, *supra,* their meaning cannot be misunderstood; and as section 143 specifically declares that the exercise of the jurisdiction it confers upon the police court of each city or town is confined to the territory included within the corporate limits or boundary of the city or town in which the court exists, it cannot be extended or exercised beyond or outside of the corporate territorial limits thereof as defined. It is also true that Kentucky Statutes, section 2911, establishes a police court in cities of the first class, but by section 2912 its jurisdiction is confined to offenses ''occurring within the corporate limits of the city.'' By section 3651, Kentucky Statutes, a police court is provided for cities of the fifth class, and its jurisdiction is likewise confined to ''offenses occurring within the corporate limits'' of such city. It will also be found that other similar statutes applicable to cities of all other classes than those named contain a like provision. It will further be observed that the jurisdiction conferred upon the police court by the several sections of the Constitution and statutes, *supra,* is exclusive as to violations of municipal ordinances occurring within the corporate limits of the city or town, and concurrent with that of justices of the peace as to offenses against the criminal laws of the state committed within the corporate limits of the city or town.

But had any of these statutes attempted to extend the jurisdiction of the police court beyond the corporate limits of the city or town in which it is established such provision clearly would have been in conflict with the provisions of the present Constitution, and therefore void; and in numerous cases involving consideration of statutory provisions attempting to extend the jurisdiction of police courts to offenses committed outside of the corporate limits of the city, we have so held. Common-

wealth v. Wickersham, 99 Ky. 21; Moran v. Commonwealth, 116 Ky. 859; Earle, Mayor v. Latonia Agricultural Association, 127 Ky. 578; Tutt v. City, 142 Ky. 536; Gleason v. Weber, 155 Ky. 431; Morris v. Randall, 129 Ky. 720; Kilburn v. Chapman, 163 Ky. 173.

The fact that the Southern Parkway was acquired by the city of Louisville, with the park as its terminus, as a right of way to and from the park, did not divest the police court of the city of Oakdale of its jurisdiction of offenses against its ordinances or the laws of the state, committed upon that part of such parkway as may be situated within its corporate limits, or deprive its city council of the power, by the passage of a proper ordinance to regulate travel thereon as on other streets of the municipality. This is necessarily so, because the police court's jurisdiction of offenses so committed is conferred by the Constitution and statutes of the state, and by the same authority the city council is given governmenal control of all streets within its corporate boundaries, which control carries with it the power to regulate by ordinance, not inconsistent with the general laws of the state, the rate of speed at which motor vehicles shall be operated upon such streets and to declare it an offense to run them at a greater rate of speed than that fixed, and also prescribe a penalty for such offense. Not only is this power conferred on the council of the city of Oakdale by law, but it may, in addition, be said that although that city was unincorporated when Southern Parkway was acquired by the board of park commissioners of the city of Louisville as a right of way to and from its park beyond, it (the city of Oakdale) previously had been laid off into numbered lots and named streets, one of which streets contained so much of Southern Parkway as now is included within the corporate boundaries of the city of Oakdale as a street or boulevard thereof. Furthermore, the lots and streets as thus laid off and designated, including Southern Parkway, were shown by a map or plat which was used as an advertisement for effecting a sale of the lots, quite a number of which then contained buildings erected by purchasers. It was also shown by this map and accompanying advertising matter that the city or town it advertised was to be called Oakdale and later incorporated, and that the land occupied by the lots and streets thereon exhibited was, or had been, owned by the real estate company from which the board of park commissioners of the city of Louisville purchased

Jacob or Iroquois park, together with the right of way over Southern Parkway to and from the same. So in view of the foregoing facts and its knowledge thereof when and before the park commissioners acquired Jacob or Iroquois Park and right of way over Southern Parkway to and from same, it is manifest that there is not even equitable ground for the contention of counsel that the right of the city of Louisville to Southern Parkway is of such character as to oust the city of Oakdale of its control as a street of such part thereof as lies within its corporate limits, or its police court of jurisdiction of such an offense as is alleged to have been committed by each of the appellees on that part of the parkway. For the reasons we have already given, the provisions of the Constitution and of the statutes enacted in conformity therewith, under which the municipality of Oakdale and its police court derive their powers, cannot be abrogated by any such supposed right.

It is true that by an act of the legislature of May 6, 1890, and substantially re-enacted July 1, 1893 (Kentucky Statutes, 2840 to 2859), the city of Louisville, through its board of park commissioners, created by the acts, *supra,* was authorized to acquire real estate beyond its then corporate limits for park purposes. The acts confer broad governmental and police powers both upon the board of park commissioners and the city, among other things providing that the former should have full control of all parks of the city, provide rules and regulations for the use and protection of same and the boulevards, drives and walks thereof and property therein. With respect to the city of Louisville both acts contain the following provisions:

"The police power of the city shall extend over the said park property of every kind as the same is or shall be acquired; and all violations of such park rules and regulations, and all other misdemeanors or offenses committed within any park property or precinct, shall be punished by the police court of the city on complaint and proceeding had, as provided by law in cases of misdemeanors and violations of city ordinances. The said commissioners and their agents and employes shall have power to make arrests for felonies or misdemeanors committed within any park precinct, or for violation of any park rules or regulations."

It cannot be successfully contended, though it was so held by the court below, that either of these acts providing for the establishing of parks by the city of Louisville extended its corporate boundaries so as to include any part of what is now the city of Oakdale, or even the Jacob or Iroquois Park, for there is nothing in the language of either act indicating such intention. On the contrary, to give them such meaning would do violence to the language of each act, because the power expressly given by each to the city is to acquire property (*i. e.*, real estate) outside of its corporate boundaries for park purposes.

Respecting the question of extension of the corporate boundaries of the city of Louisville by the acts, *supra,* it is deemed not improper to say that if such claim was ever made by the city of Louisville its abandonment is shown by the fact, judicially known to us, that it has by proper action, instituted under certain provisions of the Kentucky Statutes authorizing same, had judicially determined its right to annex and include within its corporate boundaries certain outlying territory which embraces the whole of that now included within the corporate boundaries of the city of Oakdale, the consummation of which, we are advised, is yet to result.

Touching the question of jurisdiction claimed for the police court of the city of Louisville, it should further be remarked that at the time of the passage of the act of May 6, 1890, *supra,* which was prior to the adoption of the present Constitution, there was nothing in the organic law of the state requiring uniformity in the jurisdiction of its courts; but by the present Constitution such uniformity is required and, as we have seen, section 143 of that instrument confines the jurisdiction of the police court of each city, of every class, to cases of "violation of municipal ordinances and bylaws occurring within the corporate limits of the city or town in which it is established, and such criminal jurisdiction within said limits as justices of the peace have." This is as true, therefore, of the police court of a city of the first class, like Louisville, as it is of the police court of a city of the fifth class, like Oakdale. So whatever inequalities of jurisdiction previously existed in the courts of the Commonwealth, whether of high or low degree, were corrected by the present Constitution. This, as held in Morris v. Randall,

etc., and Earle, Mayor v. Latonia Agricultural Associa-
tion, *supra,* is evident from sections 109, 135, Constitu-
tion, the first limiting the judicial departments of the
Commonwealth to the courts established by the present
Constitution, and the second declaring: "No courts save
those provided for in this Constitution shall be estab-
lished."

If the extra territorial jurisdiction attempted to be
given the Louisville police court over the offenses com-
mitted within the corporate limits of Oakdale by the act
of 1890 was permissible under the Constitution of the
state then in force, that Constitution was abrogated by
the adoption of the present Constitution, which in turn
repealed the act of the legislature in so far as it might
have affected the jurisdiction of the Louisville police
court, as its schedule, among other things, provides:

"The provisions of all laws which are inconsistent
with this Constitution shall cease upon its adoption, ex-
cept that all laws, which are inconsistent with such pro-
visions as require legislation to enforce them, shall re-
main in force until such legislation be had, but not longer
than six years after the adoption of this Constitution,
unless sooner amended by this present assembly."

The provisions of section 143, Constitution, fixing the
jurisdiction of the police courts of all cities, being explicit
in meaning and mandatory in character, and by its terms
self-executing, legislative action was not actually re-
quired to give it effect, though such legislation in con-
formity therewith was subsequently enacted applicable to
a city of each class, Kentucky Statutes, section 2911, ap-
plying to the police court of cities of the first class, and
Kentucky Statutes, section 3651, to cities of the fifth
class.

It is patent that the act of July 1, 1893 (Kentucky
Statutes, sections 2840 to 2859), enacted after the adop-
tion of the present Constitution, like that of May 6, 1890,
attempted to confer on the Louisville police court juris-
diction of offenses committed on that part of Southern
Parkway included within the corporate limits of Oakdale,
but it did not, as a matter of law, invest the Louisville
police court with such jurisdiction; indeed, for the rea-
sons already indicated, it conflicts with and violates the
provision of the Constitution mentioned and is therefore
void. Manifestly, if by act of the legislature the juris-
diction of the Louisville police court can be made to at-

tach to offenses committed upon Southern Parkway, within the corporate limits of Oakdale, its jurisdiction could as well be extended by the same means to offenses committed upon a right of way to a park the city of Louisville might acquire in an adjoining county. As it is our conclusion that the circuit court erred in granting each of the appellees the writ of prohibition prayed, the judgment in each case is reversed, with directions to dismiss each of the petitions.

The whole court sitting.