846

## GREEN v. UNITED STATES.
### No. 7215.

Circuit Court of Appeals, Ninth Circuit.
Dec. 14, 1933.

Clarence M. Jeffery, of Pocatello, Idaho, for appellant.

John A. Carver, U. S. Atty., and E. H. Casterlin and Frank Griffin, Asst. U. S. Attys., all of Boise, Idaho.

Before WILBUR, SAWTELLE, and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

While this case has been pending on appeal, the Eighteenth Amendment to the Constitution of the United States has been repealed by the adoption of the Twenty-First Amendment thereto. In our opinion, the adoption of the Twenty-First Amendment requires the reversal of the judgment for the reasons which will now be stated.

We take judicial notice of the President's proclamation that the thirty-sixth state at its constitutional convention held December 5th ratified the Twenty-First Amendment which by its terms repealed the Eighteenth Amendment to the Constitution. Dillon v. Gloss, 256 U. S. 368, 41 S. Ct. 510, 65 L. Ed. 994.

It is the universally recognized rule of American and English jurisprudence that the repeal of a criminal law before final judgment has been rendered deprives courts of power to proceed to judgment in pending criminal cases, unless there is a saving clause in the law. 1 Lewis' Sutherland, Statutory Const. (2d. Ed.) p. 285; 36 Cyc. 1228; 59 C. J. 1188, 1189, §§ 726, 727; Landen v. U. S. (C. C. A.) 299 F. 75; see People v. Bank of San Luis Obispo, 159 Cal. 65, 112 P. 866, 37 L. R. A. (N. S.) 934, Ann. Cas. 1912B, 1148. This is true whether or not the matter is pending in the trial court or on appeal in a higher court. Cooley on Constitutional Limitations (4th Ed.) 477. Congress, because of this rule, has adopted section 13, Rev. St. (1 USCA § 29), as follows:

"§ 29. Repeal of statutes as affecting existing liabilities. The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in

force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability."

This section, of course, is controlling as to legislation by Congress, and, in the absence of conflicting provisions in the repealing law, is a general saving clause applicable to all legislation. In U. S. v. Reisinger, 128 U. S. 398, 9 S. Ct. 99, 32 L. Ed. 480, the Supreme Court held that the repealing statute should be construed as though section 13, Rev. St. (1 USCA § 29), were incorporated therein. This same principle is applied in Great Northern Ry. v. U. S., 208 U. S. 452, 28 S. Ct. 313, 316, 52 L. Ed. 567, where it is said: "* * * The provisions of § 13 are to be treated as if incorporated in and as a part of subsequent enactments, and therefore under the general principles of construction requiring, if possible, that effect be given to all the parts of a law, the section must be enforced unless, either by express declaration or necessary implication, arising from the terms of the law as a whole, it results that the legislative mind will be set at naught by giving effect to the provisions of § 13." See, also, Hertz v. Woodman, 218 U. S. 205, 30 S. Ct. 621, 54 L. Ed. 1001.

On this basis offenses committed before the repeal of a criminal law have been punished under the law existing at the time the crime was committed, but in the case at bar we are confronted with an entirely different situation. Congress has not repealed the law. The repeal of the Eighteenth Amendment has taken away the power of Congress to legislate on the subject of prohibition in so far as that authority was derived solely and exclusively from the Eighteenth Amendment. There is no saving clause in the repealing provision of the Twenty-First Amendment to the Constitution. The saving clause contained in the Revised Statutes (section 13 Rev. St.) is not applicable, and does not purport to be applicable, to the situation which is presented here, where the validity of the legislation is destroyed, not by repeal of the legislation by a legislative body having authority to enact the legislation and to continue it in force and effect so long as it chooses, but by withdrawing the authority to legislate at all. A similar situation was presented to the Supreme Court of California in City of Sonora v. Curtin, 137 Cal. 583, 70 P. 674, 677. In that case the trustees of a municipal corporation of the sixth class were authorized by the act of March 3, 1883, to license business of every kind for purposes of revenue and to impose penalties for nonpayment of such license

fees. The Legislature of the state of California on March 23, 1901, amended section 3366 of the Political Code of California so as to limit the power of such legislative bodies of incorporated cities and towns to impose license fees on business "in the exercise of their police powers * * * and not otherwise." It was held that the effect of this legislation was to deprive the municipal authorities of power to exact license fees for revenue purposes or to exact penalties for the nonpayment thereof. This amendment was treated by the court as the equivalent of a repeal of the municipal ordinance, but, as a matter of fact, it was a repeal, not of the ordinance, but of the power to enact it, just as we have here a repeal of the constitutional provision authorizing Congress to enact prohibition legislation and not a repeal of the legislation enacted thereunder. The California Supreme Court in that case applied the general rule that repeal without a saving clause terminated the right to further prosecute past violations of the ordinance. The court said:

"The authority under which the ordinance for revenue purposes was passed being repealed, the ordinance is repealed as to all such purposes, and must be regarded as if it never existed, except for the purposes of those actions, which were commenced, prosecuted, and concluded while it was an existing law. * * *

"The right given the plaintiff in this case being penal in its nature, and the remedy created solely by statute, its enforcement is dependent upon the statute alone. It is still inchoate, and not reduced to possession nor perfected by final judgment. In such case the repeal of the statute destroys the remedy, unless the repealing statute contains a saving clause."

In Flanigan v. Sierra County, 196 U. S. 553, 25 S. Ct. 314, 316, 49 L. Ed. 597, the Supreme Court had under consideration a similar case involving the enforcement of a county ordinance enacted by the supervisors of Sierra county, Cal. The Supreme Court applied the principles announced in City of Sonora v. Curtin, 137 Cal. 583, 70 P. 674, supra, and Santa Monica v. Guidinger, 137 Cal. 658, 70 P. 732, and, with reference to the former case, said: "It is clear that the decision was not based alone on the penal character of the ordinance, but on the broader principle that, the power to enact it having been taken away, the power to enforce it was also taken away."

There are numerous decisions by the Supreme Court upon somewhat analogous situ-

ations. Chief Justice Marshall in U. S. v. The Peggy, 1 Cranch, 103, 110, 2 L. Ed. 49, December, 1801, had under consideration the judgment of the forfeiture of the schooner Peggy. The trial court had declined to adjudge the schooner to be a lawful prize, and the government had appealed from the decision. An appeal was taken to the Circuit Court. The latter court reversed the District Court and pronounced a judgment declaring the schooner Peggy and her cargo to be a lawful prize, and adjudged that she be condemned as forfeited to the use of the United States, etc. From this decision pronounced on the 23d of September, 1800, writ of error was taken to the Supreme Court. During the pendency of this appeal, a treaty was entered into between France and the United States with reference to the disposition of "property captured and not yet definitely condemned." The Supreme Court, speaking through Chief Justice Marshall, held that the vessel was not definitely condemned within the meaning of the treaty, and set aside the judgment. This decision was based on the proposition that the treaty became a part of the law of the land to be administered by the courts. In that connection Chief Justice Marshall said:

"It is in the general true that the province of an appellate court is only to enquire whether a judgment when rendered was erroneous or not. But if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied. If the law be constitutional, and of that no doubt in the present case has been expressed, I know of no court which can contest its obligation."

In the case of The General Pinkney (Yeaton v. U. S.) 5 Cranch, 281, 282, 3 L. Ed. 101, a schooner which had been condemned by the Circuit Court of the District of Maryland for breach of an act of Congress prohibiting intercourse with certain parts of the Island of Santa Domingo, passed February 28, 1806 (2 U. S. Stat. 351), the act expired April 26, 1808, the ship was seized November 17, 1806, libeled January 5, 1807, and condemned in the District Court July 23, 1807. This condemnation was affirmed in the Circuit Court November 7, 1807, and appeal was taken to the Supreme Court of the United States. The court stated the problem presented by the record as follows: "The only question now argued was, whether this court could now affirm the sentence of condemnation, inasmuch as the law which created the forfeiture, and authorized the condemnation, had expired?"

Chief Justice Marshall stated the rule with reference to admiralty cases that the cases were to be heard in the appellate court de novo as if no sentence had passed, and said: "The court is, therefore, of opinion, that this cause is to be considered as if no sentence had been pronounced; and if no sentence had been pronounced, it has been long settled, on general principles, that after the expiration or repeal of a law, no penalty can be enforced, nor punishment inflicted, for violations of the law committed while it was in force, unless some special provision be made for that purpose by statute."

In Norris v. Crocker, 13 How. 429, 440, 14 L. Ed. 210, decided by the Supreme Court in 1851, it was held that the repeal by implication of an act of Congress providing for recovery of a penalty terminated the right to recover, although the repealing act was passed September 18, 1850, while the action to recover the penalty was pending. With relation to the latter the Supreme Court said: "The next question referred to us for decision, presents no difficulty. * * * As the plaintiff's right to recover depended entirely on the statute, its repeal deprived the court of jurisdiction over the subject-matter."

In 1870 the Supreme Court decided the case of United States v. Tynen, 11 Wall. 88, 95, 20 L. Ed. 153, and speaking through Mr. Justice Field said: "By the repeal of the 13th section of the act of 1813 all criminal proceedings taken under it fell. There can be no legal conviction, nor any valid judgment pronounced upon conviction, unless the law creating the offence be at the time in existence. By the repeal the legislative will is expressed that no further proceedings be had under the act repealed. In Norris v. Crocker the court said that, as the plaintiff's right to recover in that case depended entirely on the statute, its repeal deprived the court of jurisdiction over the subject. As said by Mr. Justice Taney, in another case [Maryland v. Baltimore & O. R. Co., 3 How. 534, 11 L. Ed. 714], 'The repeal of the law imposing the penalty is of itself a remission.' In the case at bar, when the 13th section of the act of 1813 was repealed, there was no offence remaining for the court to punish in virtue of that section."

In Moore v. U. S., 85 F. 465, 468, the Circuit Court of Appeals of the Eighth Circuit had under consideration the effect upon federal jurisdiction of the admission of Utah as a

state upon pending prosecutions under laws of the United States adopted for the Territory of Utah. Upon authority of U. S. v. Tynen, 11 Wall. 95, 20 L. Ed. 153, supra, Yeaton v. U. S. (The General Pinkney), 5 Cranch, 281, 3 L. Ed. 101, and The Irresistible, 7 Wheat. 551, 5 L. Ed. 520, the court said:·

"In the case before us the plaintiff in error was tried and convicted, in the circuit court of the United States for the District of Utah, upon an indictment charging him with the violation of an act of congress defining an offense which was an offense only when the agreement or combination complained of related to trade or commerce in a territory. The indictment was returned by a territorial grand jury, and filed in a territorial court during the existence of a territorial form of government. If, therefore, the circuit court possessed power and authority to try this case, it was because of the existence of legislation continuing the provision of the statute defining the offense set out in the indictment in force after the admission of the state, and specially conferring upon the circuit court for that district jurisdiction in such cases. That there can be no valid judgment pronounced upon conviction in a criminal case, unless the law creating the offense be at the time in existence, is well settled. The Irresistible, 7 Wheat. 551 [5 L. Ed. 520]; U. S. v. Tynen, 11 Wall. 95 [20 L. Ed. 153]. In Yeaton v. U. S., 5 Cranch, 281 [3 L. Ed. 101], Chief Justice Marshall said:

" 'It has been long settled on general principles that, after the expiration or repeal of a law, no penalty can be enforced nor punishment inflicted for violations of the law committed while it was in force, unless some special provision be made for that purpose by statute.' * * *

"There is no provision of the enabling act, nor any other general or special act of congress, continuing the provision of the act of July 2, now under consideration, in force in Utah after the admission of the state; neither is there any statute which, in terms, provides for the transfer to and the trial of cases arising under that act in the circuit court for that district. * * *

"Neither do we think the present case comes within the provisions of section 13 of the Revised Statutes [1 USCA § 29]. That section reads as follows:

" 'The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability.'

"It is clear from the language of the section that it applies only to cases where the statute defining an offense has been repealed. The act of July 2d was not repealed by the enabling act, for it yet applies to the territories of the United States. It ceased to be in force in Utah only because it was superseded by the Constitution upon the admission of the state.

"Our conclusion is that no power existed by law in the circuit court for the district of Utah which did not appertain to the circuit courts in other districts; that the power and jurisdiction claimed for the circuit court in this case is a peculiar and extraordinary power, and does not belong to it regularly by its constitution; that no such power has been bestowed upon it by any special legislation, and could not, therefore, be legally and properly exercised by it."

There are many decisions by state courts in which it is held that an amendment to a state Constitution which is inconsistent with existing legislation repeals such legislation, and, unless there is a saving clause in the state Constitution or the amendment thereto, the repeal is effective even as to violations of the legislation occurring prior to the adoption of the constitutional amendment where punishment therefor had not been finally adjudged by the courts. In Griebel v. State, 111 Ind. 369, 12 N. E. 700, it is held that an act of the Legislature passed March 3, 1855, before the amendment of the Constitution March 14, 1891, was impliedly repealed thereby. To the same effect see Fesler v. Brayton, 145 Ind. 71, 44 N. E. 37, 32 L. R. A. 578. See, also, People ex rel. Inebriates' Home v. Comptroller, 152 N. Y. 399, 46 N. E. 852. The Supreme Court of Appeals of Virginia in Swift & Co. v. Newport News, 105 Va. 108, 52 S. E. 821, 826, 115 Am. St. Rep. 864, 8 Ann. Cas. 736, had under consideration the effect of an amendment to the Constitution with relation to existing statutes, city charters, and city ordinances. It was held that the constitutional provision repealed all such statutes, charters, and ordinances inconsistent therewith. We quote from the decision on that subject, as follows:

"Upon this branch of the case at bar we are of opinion that under the present Constitution proper acts of the Legislature (or ordinances of the city council) for the purpose of both obtaining the necessary consent and

providing just compensation are essential to the act of taking or damaging private property for public use, unless in fact the owner of the property taken or damaged himself consents that it be done and waives compensation. In other words, that the provisions of the present Constitution against the taking or damaging of private property for public use, without just compensation, were self-executing, and repealed and displaced all existing laws inconsistent therewith; and that plainly the charter of defendant in error and the city ordinances, in so far as they authorized the change of the grade of streets, resulting in injury to the property of abutting lot owners, without providing just compensation for such injury, are inconsistent with said provisions of the new Constitution, and are to that extent repealed."

The Supreme Court of California in Martello v. Superior Court, 202 Cal. 400, 261 P. 476, held that the enactment of constitutional provisions inconsistent with the existing statutes repeals the latter. See, also, Rieser v. Ward, 193 Ky. 368, 236 S. W. 255; State ex rel. Lashly v. Becker, 290 Mo. 560, 235 S. W. 1017; Wren v. Dixon, 40 Nev. 170, 161 P. 722, 167 P. 324, Ann. Cas. 1918D, 1064; Hammond v. McRae, 182 N. C. 747, 110 S. E. 102; Ladd & Tilton Bank v. Frawley, 98 Or. 241, 193 P. 916; Hawley v. Anderson, 99 Or. 191, 190 P. 1097, 195 P. 358; State v. Hecker, 109 Or. 520, 221 P. 808; Commonwealth v. Brennan, 258 Pa. 1, 101 A. 947; Duncan Township. v. Stayr, 106 Wash. 514, 180 P. 476; Zancanelli v. Central Coal & Coke Co., 25 Wyo. 511, 173 P. 981; Gherna v. State, 16 Ariz. 344, 146 P. 494, Ann. Cas. 1916D, 94; Post Printing & Pub. Co. v. Shafroth, 53 Colo. 129, 124 P. 176; Clark v. Reynolds, 136 Ga. 817, 72 S. E. 254; City of Louisville v. Vreeland, 140 Ky. 400, 131 S. W. 195; Hartshorne v. Borough of Avon-by-the-Sea, 78 N. J. Law, 556, 74 A. 151; State v. Cameron, 89 Ohio St. 214, 106 N. E. 28; Arie v. State, 23 Okl. 166, 100 P. 23; Ex parte McNaught, 23 Okl. 285, 100 P. 27; State v. Schluer, 59 Or. 18, 115 P. 1057; Dill v. Durham, 56 S. C. 423, 35 S. E. 3; Mannie v. Hatfield, 22 S. D. 475, 118 N. W. 817; Gillespie v. Lightfoot, 103 Tex. 359, 127 S. W. 799; El Paso & Southwestern Co. v. La Londe (Tex. Civ. App.) 173 S. W. 890; Wilkins v. Jewett, 139 Mass. 29, 29 N. E. 214; St. Jo-seph & D. C. R. Co. v. Buchanan County Court, 39 Mo. 485.

If, as we conclude, the effect of the adoption of the Twenty-First Amendment of the Federal Constitution is to withdraw from Congress the power to enact or to continue in force statutes enacted solely in pursuance of the power given by the Eighteenth Amendment, it is clear that it could not do so even temporarily as to past offenses by a saving clause enacted by it.

It should be observed that we are here dealing with the effect of the repeal of the Eighteenth Amendment upon the power of Congress in the states, and are not dealing with the problem presented by such repeal in territories where the legislative power of Congress is plenary.

The constitutional amendment (Amendment 21) contains no saving clause, and Congress is powerless to enact one, either before or after the repeal, hence the general rule is applicable with reference to the effect of a repeal of a penal statute on pending cases. This case must therefore be reversed, with instructions to dismiss, and it is so ordered.