## BARKER v. UNITED STATES.
### No. 10620.

Circuit Court of Appeals, Eighth Circuit.
Nov. 25, 1936.

G. T. Sullins, of Fayetteville, Ark., for appellant.

Duke Frederick, Asst. U. S. Atty., of Fort Smith, Ark. (Clinton R. Barry, U. S. Atty., and John E. Harris, Asst. U. S. Atty., both of Fort Smith, Ark., on the brief), for appellee.

Before GARDNER, SANBORN, and FARIS, Circuit Judges.

SANBORN, Circuit Judge.

By an indictment returned October 3, 1935, Harley Gover, Bob Barker, and Ed Bellamy were charged with having conspired with one another and with Lutie Jack and Frank Fletcher to order, purchase, and cause intoxicating liquor to be transported in interstate commerce from the state of Missouri and other states into the state of Arkansas, in violation of section 123 of title 27, U.S.C., as amended by the Liquor Taxing Act of 1934 (48 Stat. title 1, § 12, p. 316), and with having committed certain overt acts in the execution of such conspiracy. The duration of the conspiracy was charged to have been "from on or about the first day of June, 1934, up to and including the first day of January, 1935." The overt acts were alleged to have been committed in the year 1934. The defendants demurred to the indictment. Their demurrers were overruled. They entered pleas of not guilty, and were tried. The defendants Barker and Gover were found guilty by the jury, and sentenced. From the judgment and sentence imposed upon him, Barker has taken this appeal.

He challenges the sufficiency of the indictment, and the sufficiency of the evidence to sustain his conviction.

His criticism of the indictment is based upon the proposition that the General Assembly of the state of Arkansas, by Act No. 108, approved March 16, 1935 (page 258), repealed the state law which prohibited the manufacture and sale of intoxicating liquor for beverage purposes within the state of Arkansas, and that therefore section 123, title 27, U.S.C., as amended, became inoperative within that state and the court below lost jurisdiction to try the defendants upon the indictments returned against them, although the offense charged was committed prior to the repeal of the state law.

Section 123 as amended by 48 Stat., title 1, § 12, p. 316, reads as follows:

"Whoever shall order, purchase, or cause intoxicating liquors to be transported in interstate commerce, except for scientific, sacramental, medicinal, and mechanical purposes, into any State, Territory, or the District of Columbia, the laws of which prohibit the manufacture or sale therein of intoxicating liquors for beverage purposes, shall be fined not more than $1,000 or imprisoned not more than six months, or both; and for any subsequent offense shall be imprisoned not more than one year."

Section 2 of the Twenty-First Amendment to the Constitution of the United States provides:

"The transportation or importation into any State, Territory, or possession of the United States for delivery or use therein of intoxicating liquors, in violation of the laws thereof, is hereby prohibited."

This provision of the Twenty-First Amendment and section 123, title 27, U.S.C., as amended pursuant thereto, indicate the policy of the United States to prohibit the importation of intoxicating liquor into any state in violation of the laws of such state, and to make such importation an offense under the laws of the United States. Congress having made it a crime to import liquor into a state for beverage purposes while the laws of the state prohibit the manufacture or sale therein of such liquor, such crime is complete when the importation takes place. No repeal of its prohibitory laws by the state thereafter could constitute a forgiveness of the federal offense or deprive the United States and its courts of the right to prosecute and to try those charged therewith. The force and effect of section 123, as amended, was the same after March 16, 1935, the day the General Assembly of the state of Arkansas repealed the state prohibition law, as it was before. All importations of intoxicating liquor into Arkansas for beverage purposes prior to March 16, 1935, were offenses against the United States and remained such after the repeal. The only effect of the repeal was to prevent future importations of such liquor into Arkansas from being offenses under the

provisions of section 123, as amended. Section 123 was thereafter inoperative in Arkansas only in the sense that one factual element or ingredient of the offense defined (namely, a law of that state prohibiting the manufacture or sale therein of intoxicating liquor for beverage purposes) was no longer in existence. As has already been pointed out, the conspiracy and the overt acts in furtherance thereof took place prior to the repeal. The conspiracy charged was one to violate a law of the United States, and hence was a crime under section 88, title 18, U.S.C.

The indictment sufficiently charged the commission of the offense prior to March 16, 1935, and the act of the General Assembly of the state of Arkansas of March 16, 1935, did not affect the jurisdiction of the court below.

The cases cited by the appellant in support of his contention, namely, Green v. United States (C.C.A.9) 67 F.(2d) 846, Moore v. United States (C.C.A.8) 85 F. 465, and United States v. Chambers et al., 291 U.S. 217, 54 S.Ct. 434, 78 L.Ed. 763, 89 A.L.R. 1510, are, in our opinion, entirely beside the point. Those cases dealt with situations where a criminal statute had in some way been abrogated or where there was no longer a court with jurisdiction to deal with the offense charged in the indictment. In this case the statutes here involved remained unimpaired. They were as much laws of the United States after the repeal of the state law as before. By a change in the laws of Arkansas on March 16, 1935, section 123 became ineffectual so far as importations of intoxicating liquor into Arkansas after that date were concerned, not because the federal statute had lost its force, but because one element of the offense denounced by it was no longer present and therefore no longer susceptible of proof as a fact.

■ Barker contends that there was no evidence of any agreement between himself and any other person to transport liquor from Missouri into Arkansas, and hence no conspiracy as charged. There was evidence that he transported liquor from Missouri into Arkansas as charged in the indictment, and that it was received and sold in the latter state by a bootlegger named Lutie Jack, who was his sister-in-law. There was evidence of an illegal partnership between Barker and Lutie Jack. She testified:

"Bob Barker told me that he would set me up in business and let me sell on commission—that he would set the whiskey in and go partners with me. This must have been along the last of June 1934 I begin selling. I got my retail dealers' stamp to sell whiskey. I got the whiskey I sold from Mr. Barker. He got it in Missouri. I don't know how often he went. I went with him once as I remember. After the whiskey was sold we split the profit. I continued to sell it at his place until he and my sister separated sometime in 1934 and he went to the Washington Hotel."

She testified to having paid the defendant Gover for protection of the illicit business, and in this connection said:

"I was carrying on business as a bootlegger at my place and this protection was to be to protect me for selling liquor there at Fayetteville, and the protection was to come from Harley Gover and the sheriff's office. I made one trip up to Joplin with Bob Barker to get whiskey. I don't remember whether that was before or after the trouble I had with Bob's wife. I don't know if it was the cause of the fight or not. It wasn't any secret about me going with him. I don't know how many times I have gone to Joplin after whiskey."

While the evidence that Barker conspired with others to import liquor into Arkansas is not as clear and convincing as it might be, we regard it as sufficient to justify the jury in finding that there was an agreement or understanding between Barker and Lutie Jack to unlawfully order, purchase, and cause intoxicating liquors to be transported in interstate commerce from Missouri into Arkansas for sale for beverage purposes at a time when the laws of Arkansas prohibited the manufacture and sale of such liquors within the state. That Lutie Jack's main activity was intrastate bootlegging and that Gover was collecting tribute from her, ostensibly for furnishing protection to her illicit local business, did not mean that Barker alone was concerned in importing liquor from Missouri. Lutie Jack knew the source of supply. She was a partner of Barker. The business of the partnership was not necessarily confined to selling liquor in Arkansas after it was imported. The business also included the procuring of liquor to sell.

■ Since the jury found Barker guilty, we must accept the view of the evidence and all reasonable inferences which may be drawn therefrom which is most favorable to the government. Zottarelli v. United States (C.C.A.6) 20 F.(2d) 795; Galatas

v. United States (C.C.A.8), 80 F.(2d) 15, 23.

Taking into consideration the evidence of the overt acts of the parties, together with all attending circumstances which may be considered in determining whether a conspiracy existed, Safarik v. United States (C.C.A.8) 62 F.(2d) 892, 896, Rand v. United States (C.C.A.8) 77 F.(2d) 52, 54, Galatas v. United States, supra, Parente v. United States (C.C.A.8) 82 F.(2d) 722, 725, we cannot say that the evidence was as consistent with the innocence of Barker as with his guilt.

The judgment is affirmed.