**FIROTTO v. UNITED STATES (two cases).**

Nos. 11986, 11987.

Circuit Court of Appeals, Eighth Circuit.

Jan. 15, 1942.

Mark J. McCabe, of Minneapolis, Minn. (A. M. Cary, of Minneapolis, Minn., on the brief), for appellant.

John W. Graff, Asst. U. S. Atty., of St. Paul, Minn. (Victor E. Anderson, U. S. Atty., of St. Paul, Minn., on the brief), for appellee.

Before GARDNER, SANBORN, and WOODROUGH, Circuit Judges.

GARDNER, Circuit Judge.

Appellant was prosecuted under two separate indictments. Indictment No. 7221 contained two counts, the first charging him alone with the possession of counterfeit notes, and the second charging him alone with the sale of counterfeit notes. Indictment No. 7223 contained two counts, the first charging him, with three others, Frank Trappani, Jasper Trappani and Pete Collurafici, with conspiracy to possess, pass, distribute, utter and sell counterfeit obligations of the United States, and the second charging the same parties with possessing and transporting the counterfeit notes described in count 1. Indictment No. 7224, returned at the same time, but not naming Firotto, contained two counts, the first charging Frank Trappani with possession of counterfeit obligations of the United States, and the second charging him with the sale of certain counterfeit obligations. On motion of the Government the three cases were consolidated for the purpose of trial. By direction of the court, the jury returned a verdict of not guilty of the offense charged in the second count of Indictment No. 7223. It found Firotto guilty as charged in the first and second counts of Indictment No. 7221, and guilty of the offense charged in count 1 of Indictment No. 7223, so that Firotto was found guilty on counts 1 and 2 of Indictment No. 7221 and on count 1 of Indictment No. 7223, charging conspiracy.

In Indictment No. 7221, in which Firotto alone was indicted, the court, upon the verdict of guilty, imposed a sentence of six years and a fine of $500 on the first count, and a like sentence on the second count, the sentences to be served concurrently. In Indictment No. 7223, the court imposed a sentence of two years on Firotto on the first count, the sentence to be served concurrently with the sentence imposed in Indictment No. 7221. The jury, in its verdict, found the other defendants guilty on the counts in which they were charged with offenses, except the second count of Indictment No. 7223, in which the court directed a verdict of not guilty.

At the conclusion of the testimony, counsel for Firotto moved for a directed verdict of not guilty upon all the counts wherein he was charged, which motion, except as to count 2 of Indictment No. 7223, was denied, and he saved an exception. Firotto also excepted to the order of the court consolidating the cases for the purpose of trial.

In view of the verdict of the jury, we must take the most favorable view of the Government's testimony of which it is reasonably susceptible. From the testimony the jury may well have found that the defendant Frank Trappani operated a restaurant in Litchfield, Minnesota from May, 1939, to August, 1939, and had in his employ one June Bram. During that period June Bram and Frank Trappani had conversations from time to time regarding counterfeit money and the opportunity to obtain it. In the middle of October, 1939, June Bram went to Chicago, Illinois, with Frank Trappani and was there informed that before any counterfeit money could be obtained Frank Trappani would have to make a trip to New York City. In November, 1939, he went to New York City and after his return to Litchfield, conferred with June Bram, informing her of his trip to New York City, and in response to her inquiry as to whether or not he had obtained any counterfeit money, Frank Trappani replied that it could be arranged, and directed her to meet a certain person on the next Friday, November 17, 1939, at the Persian Palms Restaurant in Minneapolis. She was instructed by Frank Trappani how to dress and the number 654 was agreed upon as an open-sesame so that the unidentified person she was to meet could be identified. She was told that the person whom she was thus to meet would be able to furnish her with counterfeit bills.

Pursuant to this arrangement, she arrived in Minneapolis about 6 p.m. on November 17 and went to the Persian Palms. After using the number agreed upon for identification purposes, she met a man

whom she identified at the time of the trial as appellant Firotto. They later went to Firotto's hotel room, where he gave her certain counterfeit bills, and while no price was agreed upon, it was arranged that she should return the following Sunday after she had disposed of the bills, and pay Firotto whatever sum they might then agree upon. June Bram and her brother, John Bram, went to Wahpeton, North Dakota, Hancock, Minnesota, and other places in that vicinity for the purpose of passing these counterfeit bills, and succeeded in passing about a dozen or more of the counterfeit bills in $10 denominations, which she had received from Firotto. On the following Sunday, November 19, 1939, June Bram and her brother, John Bram, drove to Minneapolis from Litchfield, and during the evening June Bram met Firotto at one of the restaurants in the Bridge Square District and then paid Firotto some $75 in genuine money for the counterfeit bills she had theretofore received from him. At that time Firotto and June Bram were joined by John Bram, who related some of his experiences in trying to pass the counterfeit notes, and it was then agreed among the three of them, that June Bram would do the passing and that John would limit his activities to acting as a lookout. Thereafter, June Bram, in pursuance to an understanding between herself and Frank Trappani, called him over the telephone, saying to him that she wanted some "olives," this being the term as between them signifying counterfeit notes, and Trappani directed her to come to Chicago, which thereafter, on December 1, 1939, she did, and there met Frank Trappani. She passed one of the $10 counterfeit notes given her by Firotto in a dress shop in Chicago, and attempted to pass another at a five and dime store, but was not successful. In the evening of December 2, she went to Louie's Tavern, in Chicago, where she met Frank Trappani and had further conversation with him about counterfeit government notes, and asked him for some additional counterfeit money, and after some conversation with other parties, Frank Trappani secured a package from which he took out a number of counterfeit notes, put them in his pocketbook, and gave the balance to the defendant Pete Collurafici, with instructions to put them away for him. After Frank Trappani, Peter Collurafici, and June Bram, with another party not involved, had been out touring the night clubs on the morning of December 3, Frank Trappani furnished June Bram with some ten $10 counterfeit bills, but it was later agreed between June Bram and Frank Trappani that June should return the notes because it would not be wise to attempt to pass them in Chicago, but if she wanted some later, Trappani would either send her some or meet her at some half way place.

In the middle of December, 1939, June Bram called Frank Trappani over the telephone and said that she wanted some counterfeit notes for the holiday season, and he told her to come to Chicago, which she did. She there met Frank Trappani, Pete Collurafici and Jasper Trappani. On that visit, and in the presence of the named persons, Frank Trappani said that the town was too hot for the handling of counterfeit money. At any rate, June Bram returned to Litchfield without securing any additional money. On January 13, 1940, Frank Trappani came to Litchfield, Minnesota, in company with one Violet Jennings. Before Violet Jennings and Frank Trappani went to Litchfield, they stopped at the Via Lago Cafe, where Frank Trappani interviewed Firotto, and it was arranged between them that Firotto would take dinner with Frank Trappani, Violet Jennings and June Bram, when they returned from Litchfield. On the way to Litchfield, Frank Trappani threw a package purporting to be a package of Camel cigarettes into Violet Jennings' lap and told her to open it, saying that they were "olives," and when she remarked that it looked like money he said it was counterfeit, and in response to her inquiry as to whether or not that was not risky business, he replied that it was not, that June Bram passed it and that he didn't take any risks. After returning from Litchfield with June Bram, at Frank Trappani's suggestion, Violet Jennings gave June Bram one of the notes out of the cigarette package, and June Bram tried to pass it at a grocery store at Penn Avenue, but without success. Later the three went to the Via Lago Cafe, where they dined with Firotto, and after dinner Firotto, in referring to Violet Jennings, stated to Frank Trappani that she was "kind of young" to be mixed up in his activities, but Frank Trappani assured him that it was all right because they were going to be married, to which Firotto responded that she would hang him yet. After dinner, Firotto and Frank Trappani retired to a back room and conferred, and after they had left the Via Lago Cafe, Frank Trappani told June Bram that Firot-

to would not give him over $25 per $100, and that she could do better than that.

On that same evening, at the Wisconsin Hotel, Frank Trappani told June Bram that he needed more money and she gave him $20 in good money, and he turned over to her the cigarette package which contained twenty-nine counterfeit notes which she took and retained until July, 1940, when her brother John and she went to Iowa and passed some ten or eleven of them. When she was later apprehended by the Secret Service she had about eighteen of these notes in her possession that had been given her on January 13 by Frank Trappani. She secreted some eighteen of the notes in the Ramsey County jail, where they were later found by the Assistant Jailer and produced in court and offered in evidence.

On November 9, 1940, Frank Trappani, Jasper Trappani and Violet Jennings were together in Chicago, at which time Jasper Trappani had a lot of counterfeit bills which he threw into Violet Jennings' lap, remarking that they were hotter than a pistol, suggesting that they leave by car. On November 25, 1940, Firotto was in Chicago and told Frank Trappani in the presence of Violet Jennings that he was going to New York; that things were too hot in this part of the country and that June Bram was coughing up everything she knew. In the month of December, 1940, Frank Trappani, Peter Collurafici and Violet Jennings were together in Chicago, and Peter Collurafici was in possession of certain counterfeit bills which he threw on the table in front of those present.

There was other evidence consisting of facts and circumstances connected with the above related testimony, from all of which the Government contends that the defendants had entered into a conspiracy for the purpose of possessing, passing, distributing, and selling counterfeit obligations of the United States. The defendants denied much of the Government testimony which we have summarized. Firotto took the stand in his own behalf and denied any connection whatever with the counterfeiting transactions. He specifically denied that he saw June Bram on November 17, or 19, 1939, or at any other time, except the time when she came in company with Violet Jennings and Frank Trappani on January 13, 1940. He testified that on November 17, 18 and 19, 1939 he was in Minneapolis working in his cafe as manager, and during the evenings of those days he was at his

cafe continuously from five or six o'clock in the evening until early the next morning; that on November 22, 1939, he left on a trip to see his parents in Chicago, where he stayed until November 27, 1939; that he had not seen Frank Trappani for a year and a half prior to January 13, 1940. He denied substantially all the conversations attributed to him, and denied any knowledge of any counterfeiting conspiracy.

Firotto alone has appealed, and he seeks reversal on the grounds (1) that the court erred in consolidating the three cases for trial; (2) that the evidence was insufficient to prove his guilt beyond a reasonable doubt; and (3) that Frank Trappani having subsequent to the trial admitted by his affidavit that he gave perjured testimony at the trial, the court should have granted Firotto's motion for a new trial.

We assume that the consolidation of all three indictments for the purpose of trial was pursuant to 18 U.S.C.A. § 557. This statute provides: "When there are several charges against any person for the same act or transaction, or for two or more acts or transactions connected together, or for two or more acts or transactions of the same class of crimes or offenses, which may be properly joined, instead of having several indictments the whole may be joined in one indictment in separate counts; and if two or more indictments are found in such cases, the court may order them to be consolidated."

In Indictment No. 7223, Firotto, together with all the other named defendants, was charged with a conspiracy to possess, pass and sell counterfeit $10 silver certificates. The overt acts charged include the substantive counts in Indictment No. 7221 against Firotto alone and Indictment No. 7224 against Frank Trappani alone. In the second count of Indictment No. 7223, Firotto, Jasper Trappani and Peter Collurafici were charged with aiding and abetting Frank Trappani in the possession, sale and transportation of counterfeit $10 silver certificates. Thus all the acts and transactions charged were connected together. They were concerned with a series of acts participated in by Firotto and the other defendants, during a fairly definite period of time. They clearly involved two or more acts or transactions connected together. These acts and transactions pertained to the same class of offenses and it has been held that the statute applies to several defendants as well as to a single defendant. In United

536

States v. Smith, 2 Cir., 112 F.2d 83, 85, the court said: "Nor was there error in the consolidation of an indictment against one defendant with an indictment against another defendant and with indictments against all three defendants."

In Krause v. United States, 8 Cir., 147 F. 442, 444, the trial court had consolidated three indictments for the purpose of trial. This court pointed out that as the several acts charged were predicated on allied or connected transactions of the same degree, consolidation was permissible. In the course of the opinion it is said: "Neither was there reversible error in the action of the court in refusing the request of defendants for separate trials. In practice this is matter resting largely in the sound discretion of the trial court, which will not be reviewed in the absence of clear indications that serious prejudice resulted therefrom to one or more of the defendants."

■ It is urged that appellant was prejudiced because (1) the consolidation added to the issues to be determined by the jury; (2) a natural complexity and confusion must have resulted, making it more difficult for any jury to try to segregate the testimony; and (3) it linked the appellant with those whose guilt was inevitable. That additional issues may have to be determined by the jury would not seem to be material to a defendant, and certainly not necessarily prejudicial. As to the possibility of confusion and complexity, it was the function of the trial court to clarify and simplify the issues by its instructions, and an examination of the instructions indicates that that duty was ably discharged in the instant case; in fact, no exceptions are urged to the court's instructions. That appellant was tried with his associates would not seem to be a legal ground for objection to the consolidation, even though the guilt of these associates was "inevitable." At least, when the motion was presented to the court, it could not be said to have been apparent that the guilt of the other defendants joined was "inevitable," and in any event defendant was properly joined with all the other named defendants in Indictment No. 7223, the conspiracy indictment. These contentions do not, in the face of the record, convince us that the court abused its discretion in ordering the consolidation. The statute passed by Congress authorized consolidation in the interest of economy and speed. The authority there granted is to be exercised in a sound discretion of the trial court. Finding no evidence of prejudice, this contention of appellant is denied.

■■ The contention of Firotto that the court erred in denying his motion for a directed verdict of not guilty seems to be bottomed upon contentions which can not here be entertained. The credibility of witnesses and the weight to be given to their testimony are matters to be determined by the jury. Flowers v. United States, 8 Cir., 83 F.2d 78; Roberts v. United States, 8 Cir., 96 F.2d 39; Ryan v. United States, 8 Cir., 99 F.2d 864; Galatas v. United States, 8 Cir., 80 F.2d 15. The argument here made might properly have been addressed to the jury, and we assume it was in fact presented in behalf of Firotto, but notwithstanding the alleged weaknesses of the testimony, and notwithstanding the testimony which Firotto himself gave, the jury, whose province it was, credited the Government's testimony and necessarily disbelieved the testimony of Firotto. We have given some analysis of that testimony. It does not impress us as being fantastic or unbelievable, as argued by counsel for appellant, and it must be viewed in a light most favorable to the Government. Barker v. United States, 8 Cir., 86 F.2d 284; Walker v. United States, 8 Cir., 93 F.2d 383. It was believed by the jury and is clearly substantial, so that there was no error in denying Firotto's motion for a directed verdict.

■ ■ It is finally argued that the court erred in denying Firotto's motion for a new trial. Such a motion is addressed to the discretion of the court, and where the court considers it and denies it, its action will not be reviewed by this court. Mann v. United States, 8 Cir., 49 F.2d 131. The basis for the motion for a new trial was an affidavit executed by the defendant Frank Trappani, after his conviction, in which he confessed perjury on the witness stand during the trial, with reference to certain transactions with June Bram and John Bram in passing counterfeit notes. Frank Trappani was not a Government witness, and it is a far cry to now claim that Firotto was convicted because of Trappani's testimony. Trappani, in fact, took the stand in his own behalf and denied any and all connection with any counterfeiting activities. He did not directly or indirectly involve Firotto and his testimony in no manner supported the contention advanced by the Government as to any participation by Firotto. The contention with reference to

this alleged newly discovered evidence is wholly without merit.

The judgments appealed from are therefore affirmed.