**CITY OF LOUISVILLE et al. v. MILTON et al.**

Court of Appeals of Kentucky.

Feb. 22, 1952.

Gilbert Burnett, City Atty., Wm. E. Berry, Asst. City Atty., Louisville, A. E. Funk, Atty. Gen., Jo M. Ferguson, Asst. Atty. Gen., for appellants.

Edward G. Klemm, Louisville, for appellees.

LATIMER, Justice.

This suit challenges the authority of the City of Louisville to convey a part of Cherokee Park to the State of Kentucky, to be used by it as a part of its highway system, and questions the right to use this property for commercial traffic.

On February 7, 1950, the City of Louisville conveyed by deed to the Department of Highways and the Commonwealth of Kentucky those portions of Cherokee Park embraced in Eastern Parkway from its gateway entrance at Bardstown Road and Eastern Parkway to Willow Avenue; Willow Avenue to its terminus at Cherokee Drive or Park Boundary Road; thence across Cherokee Drive and a "new cut road" to Cherokee Parkway; thence Cherokee Parkway to its terminus at Grinstead Drive, a north gateway entrance to Cherokee Park. The State Highway Department annexed these park properties and made them a part of the state primary road system as a by-pass to U. S. Highway 60.

In the belief that the conveyance of these streets and the opening of same to commercial truck traffic is not a park purpose but an unwarranted, unnecessary and unlawful deviation therefrom, appellees instituted this action and sought therein (a) to enjoin appellants from the continued deviation and misuse of Cherokee Park and its roads and parkways from park purposes to commercial traffic and restoration of the violated portions of Cherokee Park to their true trust status for park purposes; and (b) a declaration of the rights of the parties.

No controversy exists as to the facts. After hearing the cause on the pleadings and exhibits, the Chancellor entered judgment declaring the rights of the parties and enjoining defendants from using or permitting to be used for commercial truck traffic, or for any purpose other than for strict public park purposes, Cherokee Park and particularly the portions of the park embracing the drives and streets originally set out herein; ordered and directed the removal of certain signs and metal fences from along the portions of the parkways; ordered and directed the City of Louisville and T. Byrne Morgan, Director of Parks of

the City, and their successors in office, to hold, maintain, control and manage the park and particularly the portion involved herein in strict and inviolable trust for public park purposes only and not to suffer or permit any future deviation therefrom; and further directed that suitable and proper signs be placed at the entrances and certain intersections and that truck traffic, except for local deliveries, be prohibited through Cherokee Park.

We first direct attention to the manner in which the City of Louisville acquired title to the property in question. The Legislature approved an Act on May 6, 1890, captioned "An Act to provide for the establishment of public parks in and adjacent to the city of Louisville, Kentucky, and the improvement and management of the same", Chapter 1314 of the Acts of the General Assembly of 1889 and 1890, volume 3, page 267 et seq.; section 2850, Carroll's Kentucky Statutes. This Act provides: "* * * The title to all property acquired for park purposes shall vest in the board of park commissioners, and the same, with all the improvements and equipments, shall be held in strict and inviolable trust for public park uses, free from all taxation, impost, or assessment; state, county, district, municipal or otherwise."

The title to the property embraced by Cherokee Park was acquired by the Board of Park Commissioners through various deeds to be held for public park purposes. In one deed this purpose was expressly provided. In the others, we have such provision by implication, in that each designated the grantee therein as "The Board of Park Commissioners of the City of Louisville, a corporation incorporated under an act of the General Assembly of the Commonwealth of Kentucky, entitled 'An Act to Provide for the Establishment of Public Parks in and adjacent to the City of Louisville, Kentucky, and the improvement and management of the same', approved May 6, 1890."

In 1942, the Legislature passed another Act, KRS 97.250 to 97.258, captioned "An Act relating to and amending the charter of cities of the first class," wherein the Board of Park Commissioners of the City of Louisville was abolished and the title to all property theretofore acquired by the Board of Park Commissioners was transferred to the City of Louisville.

We think it unnecessary to set out in detail the various propositions contained in the declaration of rights since they merge into and must stand or fall with the two propositions: namely, whether or not the City of Louisville has a right to convey that portion of Cherokee Park embracing the drives and parkways herein, and whether or not same can be used for commercial truck purposes. The numerous questions raised by appellee are likewise dependent upon and must stand or fall with the determination of those questions. Consequently, we shall confine ourselves to a consideration of those two dominant propositions.

Apparently appellees take the position that restrictions in conveyances irrespective of governmental authority are the guiding and overriding considerations. We mention at this point, merely as a background, the power of eminent domain possessed by the sovereign, which is inherently governmental in character. Such power cannot be contracted away, and as said in Chesapeake & O. Ry. Co. v. Greenup County, Kentucky, 6 Cir., 175 F.2d 169, 173: "The power of eminent domain is 'so inherently governmental in character and so essential for the public welfare' as not to be susceptible of abridgement by agreement."

This power may be exercised either upon private property or upon property devoted to public use. Louisville & N. Ry. Co. v. City of Louisville, 131 Ky. 108, 114 S.W. 743, 24 L.R.A.,N.S., 1213. Thus, in fact, appellees' complaint is directed against doing a thing by agreement, which otherwise might have been done through the exercise of inherent governmental authority and power. However, we are in no way determining the question of the right to exercise power of eminent domain nor basing our decision on an agreement concerning property which is subject to the power of eminent domain.

It will be noted at the outset that the restrictions as to holding the property

in trust were restrictions imposed by the Legislature without regard to the power of any grantor to convey or limit his conveyance. The power to create a municipal corporation is vested in the Legislature. This obviously carries with it the power to impose such limitations as it may see fit. As equally obvious it follows, although not invariably so, that the Legislature which initially imposed limitations has the power to modify those limitations. The Legislature, exercising its power, in 1942 abolished the Board of Park Commissioners of the City of Louisville and transferred title to the park to the City of Louisville and modified control of Cherokee Park roads by what is known as the proviso, which is a portion of KRS 97.252 and reads: " * * * provided, however, that the city may use any portion of such property as may be necessary and proper for the construction, extension, or widening of streets, boulevards, thoroughfares or other public ways, * * * ". The exercise of such power is in keeping with the principle that the Legislature may "authorize the construction of a highway in a park, and, where a charter or statutory provision so authorizes, a street or highway may be built through a park * * * ", 64 C.J.S., Municipal Corporation, § 1821, page 305. In Marret v. Jefferson County Construction Company, 161 Ky. 845, 171 S.W. 396, 397, it was said: "The Legislature has the power to permit the control of park boulevards by municipalities as it sees fit, * * * ."

■ We are cognizant of the existing general rule that city parks may not ordinarily be subjected to street usage or travel in the absence of legislative authority so to do. But here, it will be observed, there is legislative authority. The establishment of roadways through the park was at the outset authorized by the Legislature and no limit was placed upon the use thereof. In Rieser v. Ward, 193 Ky. 368, 236 S.W. 255, 257, it was held that Southern Parkway, which was established, maintained and controlled under the same statute and the same Board of Park Commissioners involved herein, was subject to the city council's power to regulate traffic thereon "as on other streets of the municipality".

The right of the city to delegate its power and authority under the act to the state is questioned. We said in Levy v. Curlin, Ky., 241 S.W.2d 997, 999: "The state is in a sense acting as the agent of the City and if the principal and the agent are satisfied with the terms under which the work is being done, and the principal has the authority to undertake the work, appellants could have no legally recognizable complaint."

■ We conclude that the municipal corporation, having been given expressed authority from the Legislature to construct roadways through the park property and make them a part of the city street system, holds same subject to the power of the Legislature.

We think it entirely unnecessary to enter into an extended discussion of what technically may be interpreted as a deviation of the use from strictly park purposes. However, we may mention that this case presents a querulous conflict of interests between groups of citizens. On the one hand we have a limited group who use these streets for their own private purposes in going to and from their homes, who are served by delivery trucks using these streets, but whose aesthetic sense is disturbed by the presence of other commercial trucks on these streets and who desire that traffic be routed through some other neighborhood where there is less valuable property and the citizens are less fortunately situated. On the other hand we have a larger general interest, demanding an expedient and convenient movement of an ever increasing traffic. Unless prohibited by legislative enactment this larger general interest should prevail.

We conclude that, under both legislative and judicial authority, the city may control its park roads and boulevards or acting in concert with the state may delegate this authority to the Highway Department.

The judgment is reversed with directions to enter one in conformity with this opinion.